[No. A125264. First Dist., Div. Five. May 26, 2010.]

HAIGHT ASHBURY FREE CLINICS, INC., Plaintiff and Respondent, v. HAPPENING HOUSE VENTURES et al., Defendants and Appellants.

1540

**COUNSEL**

Shartsis Friese, Frank A. Cialone and Felicia A. Draper for Defendants and Appellants.

Orrick, Herrington & Sutcliffe, William F. Alderman and Susan D. Resley for Plaintiff and Respondent.

**OPINION**

**JONES, P. J.**—Respondent Haight Ashbury Free Clinics, Inc. (HAFCI), filed a complaint against appellants Happening House Ventures (HHV) and David E. Smith alleging Smith had violated his fiduciary duties to HAFCI. HHV and Smith filed a motion to strike under the SLAPP (strategic lawsuit against public participation) statute (Code Civ. Proc., § 425.16),[1] arguing that two of the causes of action HAFCI alleged must be dismissed because they were based in part on constitutionally protected activity. The trial court disagreed and denied the motion. HHV and Smith now appeal arguing the trial court erred when it denied their motion. We agree and will hold that acts that are protected under the SLAPP statute are not "merely incidental" to a cause of action simply because they represent a relatively small number of many alleged wrongful acts.

## I. FACTS AND PROCEDURAL HISTORY

In 1967, appellant David E. Smith founded HAFCI, a nonprofit corporation that provides free medical services in San Francisco. Also in 1967, Smith founded appellant HHV, which became a limited partnership by 1977. HHV was formed to assist HAFCI by acquiring San Francisco real estate, which would serve as a home for HAFCI's services and ultimately be acquired by HAFCI at HHV's cost less the mortgage balance. Smith was the general partner of HHV, and HAFCI became a limited partner in 1977.

HHV acquired three buildings in San Francisco for HAFCI's use (the Buildings) and leased them to HAFCI, which used them in its operations.

---

[1] Unless otherwise indicated, all further section references will be to the Code of Civil Procedure.

In 2005, a dispute arose between HAFCI and HHV, and the HAFCI board of directors removed Smith from his position as HAFCI's president.

### A. *The Partnership Case*

In August 2005, HAFCI filed a lawsuit against HHV, Smith, and HHV's administrator David Newlin (Newlin), entitled *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (Super. Ct. S.F. City and County, 2009, No. CGC-05-444472) (the Partnership Case). HAFCI sought an accounting of limited partnership interests in HHV and a judicial declaration of the amount of HAFCI's proper partnership interest in HHV.

After a trial, the court determined in July 2008 that HAFCI's proper percentage of interest in HHV was 30.68 percent.

### B. *The Lease Case*

Meanwhile, in March 2006, HHV filed a lawsuit against HAFCI, entitled *Happening House Ventures v. Haight Ashbury Free Clinics, Inc.*, in San Francisco City and County Superior Court (2009, No. CGC-06-450040) (the Lease Case). HHV alleged that HAFCI had breached its lease with HHV (the Lease), which obligated HAFCI to repair, keep and maintain the Buildings in good condition, return them to HHV in the same condition as when received (reasonable wear and tear excepted), and comply with governmental require-ments regarding the Buildings.[2]

In March 2008, HHV accepted HAFCI's offer to settle the Lease Case pursuant to section 998. The court entered judgment in HHV's favor and awarded HHV prejudgment interest, attorney fees, and costs, for a total judgment of $594,237.95. HAFCI appealed the awards of prejudgment interest, attorney fees and costs. We affirmed the award of prejudgment interest in *Happening House Ventures v. Haight Ashbury Free Clinics* (May 28, 2009, A122792) (nonpub. opn.), and HAFCI abandoned its appeal of the fees and costs award in *Happening House Ventures v. Haight Ashbury Free Clinics* (May 5, 2009, A124121) (app. dism.).

HHV obtained a writ of execution on the Lease Case judgment and began to levy on HAFCI's property.

### C. *This Proceeding*

In January 2009, HAFCI filed the instant lawsuit against HHV and Smith. The first and second causes of action seek a declaratory judgment that the

---

[2] HAFCI vacated one of the Buildings in 2006, vacated another in 2007, and was notified by HHV in December 2008 that its tenancy as to the third building was terminated effective January 31, 2009.

HHV limited partnership has been dissolved or, in the alternative, a judicial decree dissolving HHV. The third cause of action, against Smith in his individual capacity, alleges that Smith breached fiduciary duties he owed to HAFCI as general partner of HHV and as a director, officer, and key employee of HAFCI. A fourth cause of action incorporates the allegations of the third cause of action and seeks an accounting based on Smith's purported breaches of his fiduciary duties.

### 1. The Third Cause of Action

Of particular relevance to this appeal is HAFCI's third cause of action, which alleges that Smith breached his fiduciary duties to HAFCI in several ways. In part, the cause of action is based on the allegation that Smith allowed Newlin to manage key aspects of HAFCI's and HHV's business (including granting Newlin power of attorney to perform Smith's duties as general partner of HHV) without adequate supervision, resulting in Newlin's commission of a number of wrongful and improper acts. In addition, paragraph 31 in the third cause of action asserts that Smith breached his fiduciary duties to HAFCI by committing numerous other acts, two of which would become the subject of the motion at issue in this appeal (and which we set forth in italics): "(a) purporting to consent on behalf of all HHV limited partners, including HAFCI, to waive their right to purchase HHV interests that other limited partners wished to sell; [¶] (b) engaging in the conduct found to be improper in the Decision in the Partnership Case; [¶] (c) engaging in conduct designed to enhance Smith's personal tax position in ways that were of no benefit to HAFCI as a nonprofit corporation; [¶] (d) failing to give HAFCI the opportunity promised by HHV and Smith to acquire the three HHV Buildings at HHV's cost less the mortgage balance; [¶] (e) using rent paid by HAFCI under the Lease to build Smith's personal wealth through the acquisition of real estate partnerships, other securities and tax benefits; [¶] (f) diverting HAFCI opportunities to himself; [¶] (g) using HAFCI resources for his personal use; [¶] (h) causing HHV to pay the legal expense of defending him against his own breaches of fiduciary duties to HAFCI; [¶] (i) causing HHV to enter into a settlement agreement with Newlin under which HHV recovered far less than the damage caused by Newlin's conduct as described above and released all claims against Newlin; [¶] (j) causing HAFCI to consent to a Lease that imposed on HAFCI all of the burdens of ownership of the Buildings without receiving any of the benefits of ownership; [¶] (k) causing HHV to pay personal expenses; [¶] (l) saddling HAFCI with the obligation to repay a 1985 'loan' from HHV at a time when HAFCI's rent payments to HHV exceeded the combined amount of the loan and HHV's expenses for the Buildings, in effect 'loaning' back to HAFCI a portion of HAFCI's own excessive rent payments; [¶] (m) using HHV's securities accounts for the benefit of SFREIC and other Smith-related entities; [¶] (n) causing HHV to enter into a settlement with its former attorney Arthur Brunwasser that

insufficiently compensated HHV for Brunwasser's conflicts of interest in representing HHV, Smith and Newlin at the same time; [¶] *(o) willfully conspiring with Newlin to have both of them testify falsely in depositions in the Partnership Case in what Smith described as a 'legal compromise;'* and [¶] *(p) willfully misrepresenting facts surrounding the claims in the Partnership Case in a letter to the San Francisco Bay Guardian.*" (Italics added.)

The complaint alleges that "Smith's *breaches* of fiduciary duty alleged above proximately caused injury to HAFCI and/or HHV and entitle them to recover damages from Smith." (Italics added.)[3]

### 2. *Motion to Strike*

Appellants' counsel informed HAFCI's counsel that appellants intended to file a SLAPP motion based on the allegations in paragraphs 31(*o*) and 31(p), explaining that the allegations regarding the discussion of deposition testimony and the letter to the newspaper "need to be dropped." Early in a string of e-mail messages, HAFCI's attorney proposed that they try to resolve the issue "without a motion," disagreed with appellants' position, but asked to postpone further discussion until after HAFCI's attorney returned to town.

While HAFCI's counsel was still away, HHV and Smith filed their special motion to strike the third and fourth causes of action of HAFCI's complaint pursuant to section 425.16, on the grounds that those causes of action were based on activity protected by the SLAPP statute. In particular, HHV and Smith urged that the allegations of a conspiracy to testify in deposition, and the allegations of false statements in a letter to a newspaper about the Partnership Case, targeted activity in furtherance of Smith's constitutional right to free speech and petition.[4]

In support of the motion to strike, Smith submitted a declaration explaining the activity alleged in paragraphs 31(*o*) and 31(p). As to the alleged conspiracy to testify falsely in deposition, Smith averred that at a meeting with Newlin and their attorney in the Partnership Case, he proposed that he and Newlin testify to events surrounding a transfer of partnership units from HAFCI to Newlin as they each remembered them, but that they also note that the other person had a different recollection. As to the letter to the newspaper, Smith averred that his attorney in the Partnership Case demanded that he

---

[3] Smith and HHV sued Newlin in San Francisco Superior Court (*Smith v. Newlin* (2007, No. CGC-06-454739)).

[4] Through counsel, HAFCI agreed that it would drop paragraphs 31(*o*) and 31(p) from its complaint and not offer evidence on those subjects if HHV agreed to withdraw its motion to dismiss. Counsel for HHV and Smith did not respond.

send a letter affirming Newlin's version of the events surrounding the transfer of the partnership units, his attorney prepared the letter and the letter was sent to the newspaper, which published it in April 2006. Appellants also submitted a copy of the decision in the Partnership Case, in which the judge stated there was no evidence that HHV authorized or ratified Newlin's misconduct in converting HHV units owned by HAFCI, and there was no finding that Smith had not acted in good faith or in a manner he reasonably believed to be in HHV's best interests.

HAFCI opposed the motion to strike, contending the allegations in paragraphs 31(*o*) and 31(p) were merely incidental to the third and fourth causes of action, the gravamen of those causes of action did not target protected activity, and paragraphs 31(*o*) and 31(p) did not allege protected activity anyway. HAFCI submitted excerpts from the transcript of Smith's testimony in the Partnership Case, which, in HAFCI's view, showed Smith's agreement to testify falsely in deposition and his admission that his letter to the editor contained false statements.

The trial court denied the special motion to strike. The court stated: "[t]he Court having concluded that the gravamen of the third and fourth causes of action is that defendant Smith mismanaged plaintiff and Happening House Ventures and engaged in self-dealings, that the allegations that are the subject of this motion are incidental to those causes of action, and that the motion was not frivolous, it is [¶] ORDERED that the special motion be, and the same hereby is DENIED, and that plaintiff's request for fees be, and the same hereby is, DENIED."

## II. DISCUSSION

As mentioned, appellants' motion to strike was based on the contention that paragraphs 31(*o*) and 31(p)—alleging an agreement to testify falsely in deposition and a letter to a newspaper containing statements about pending litigation—targeted protected activity. Because paragraphs 31(*o*) and 31(p) set forth two of several acts allegedly constituting the breach of fiduciary duty cause of action, appellants urge that the third cause of action should be stricken in its entirety. Contending the fourth cause of action is based on Smith's alleged breaches of fiduciary duty—including the breaches alleged in paragraphs 31(*o*) and 31(p)—appellants further insist that the fourth cause of action should be stricken in its entirety.

### A. *Code of Civil Procedure Section 425.16*

██ Section 425.16 authorizes a defendant to file a special motion to strike any cause of action arising from an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public

issue.[5] It establishes a procedure by which the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 312 [46 Cal.Rptr.3d 606, 139 P.3d 2] (*Flatley*); *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 [25 Cal.Rptr.3d 298, 106 P.3d 958].) The purpose is to curtail the chilling effect meritless lawsuits may have on the valid exercise of free speech and petition rights, and the statute is to be interpreted broadly to accomplish that goal. (§ 425.16, subd. (a); *Schaffer v. City and County of San Francisco* (2008) 168 Cal.App.4th 992, 997–998 [85 Cal.Rptr.3d 880] (*Schaffer*).)

In its motion, the defendant must make a threshold showing that the plaintiff's cause of action arises from the defendant's free speech or petition activity, as specified in the statute. (§ 425.16, subds. (b), (e).) The burden then shifts to the plaintiff to establish a probability of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).) If the plaintiff fails to do so, the motion to strike is granted and the prevailing defendant is entitled to recover his or her attorney fees and costs. (§ 425.16, subd. (c).) We review an order granting or denying a motion to strike under section 425.16 de novo. (*Flatley, supra*, 39 Cal.4th at p. 325.)

### B. First Prong: Protected Activity

The first prong of the relevant analysis required HHV and Smith to make a threshold showing that HAFCI's third and fourth causes of action arose from their acts "in furtherance of [their] right[s] of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)

In this case, there are two subissues: (1) whether paragraphs 31(*o*) and 31(p) allege activity that is subject to protection under the SLAPP statute; and (2) whether the third and fourth causes of action "arise from" those acts for purposes of the SLAPP statute.

---

[5] In pertinent part, section 425.16 provides: "(b)(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. [¶] (2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(1), (2).) At the time the SLAPP motion was filed in this case, the statute referred to "the United States or California Constitution" rather than "the United States Constitution or the California Constitution." This change making no difference to our analysis, we refer to the statute as it presently reads.

### 1. *Are the Acts Alleged in Paragraphs 31(o) and 31(p) Protected Activities*

By statutory definition, an " 'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes: (1) any written or oral statement or writing made before a . . . judicial proceeding . . . ; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in . . . a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

#### a. *Conspiracy to testify falsely*

Paragraph 31(*o*) alleges that Smith breached his fiduciary duties by "willfully conspiring with Newlin to have both of them testify falsely in depositions in the Partnership Case."

█ Smith's purported oral statements to Newlin (and their attorney, Brunwasser) about how to testify in upcoming depositions in a pending lawsuit constitute statements made in connection with an issue under consideration by a judicial body (§ 425.16, subd. (e)(2)). (See *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1478 [74 Cal.Rptr.3d 1] [" 'statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute . . .' "].) The alleged activity therefore falls within the scope of the SLAPP statute.

HAFCI argues that the SLAPP statute does not protect the act of agreeing to lie in a deposition. HAFCI cites no legal authority for this proposition, but the argument appears to be that such conduct is not protected by the federal Constitution. HAFCI further asserts that false testimony does not constitute the "valid exercise" of the constitutional right of free speech to which the Legislature referred in section 425.16, subdivision (a).

█ HAFCI's argument is unpersuasive. To make their threshold showing under the first prong of the SLAPP analysis, appellants need not prove that the targeted activity is in fact constitutionally protected. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 94–95 [124 Cal.Rptr.2d 530, 52 P.3d 703] [" 'The Legislature did not intend that . . . to invoke the special motion to strike the defendant must first establish her actions are constitutionally protected under the First Amend. as a matter of law.' "]; *Fox Searchlight Pictures, Inc. v.*

*Paladino* (2001) 89 Cal.App.4th 294, 305 [106 Cal.Rptr.2d 906] [lawsuit was not outside scope of SLAPP statute even though defendant had no 1st Amend. right to disclose privileged and confidential information or refuse to return materials to their rightful owner].) Appellants need only show that the activity falls within the scope of section 425.16, subdivision (e), by which the Legislature has set forth the parameters of activity subject to the SLAPP protections. (*Schaffer, supra*, 168 Cal.App.4th at pp. 1001–1004.) As discussed *ante*, the allegations of paragraph 31(*o*) fall within section 425.16, subdivision (e)(2).

Similarly, section 425.16, subdivision (a) does not limit the SLAPP scheme to activity that itself constitutes a "valid exercise" of the constitutional right of free speech or petition. Section 425.16, subdivision (a) reads in pertinent part: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to *chill* the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (Italics added.) In order to curb such lawsuits and their chilling effect, the Legislature has required early scrutiny of causes of action arising from activity identified in *section 425.16, subdivision (e)*. Appellants have established that paragraph 31(*o*) alleges activity within the scope of that subdivision.

### b. *Letter to the San Francisco Bay Guardian*

Paragraph 31(p) alleges that Smith breached his fiduciary duties by "willfully misrepresenting facts surrounding the claims in the Partnership Case in a letter to the San Francisco Bay Guardian." His statements to the newspaper are within the scope of subdivision (e)(2) of section 425.16, as a "written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body."[6]

HAFCI argues that Smith admitted his letter contained statements that were false. However, whether or not his statements were false does not determine whether they constitute protected activity for purposes of the SLAPP statute. Subdivision (e)(2) of section 425.16 pertains to "*any* written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body," not merely to statements that everyone agrees were true. (Italics added.) While an exception to the reach of subdivision (e) arises where "the defendant concedes the illegality of its

---

[6] Appellants contend that the statements were also protected under section 425.16, subdivision (e)(4), pertaining to speech in connection with a public issue or matter of public interest, and under section 425.16, subdivision (e)(3), as statements in a public forum about an issue of public interest. We need not and do not address these issues, since the statements were protected under section 425.16, subdivision (e)(2).

conduct or the illegality is conclusively shown by the evidence" (*Flatley, supra,* 39 Cal.4th at p. 316 [defendant's conduct was criminal extortion as a matter of law]), appellants do not concede that their acts were illegal and HAFCI has not conclusively shown they were.

Lastly, HAFCI protests that there is no free speech defense to a claim for breach of fiduciary duty, and the "anti-SLAPP statute is not a license to lie in order to escape one's fiduciary responsibilities or liability for their breach." These arguments miss the point. The SLAPP statute does not provide a defense to a claim or a license to do anything. It merely subjects certain causes of action to closer scrutiny because they target certain activities. A cause of action that targets such activities will nonetheless survive if the plaintiff, in the second prong of the SLAPP analysis, establishes some minimal degree of merit to the claim. (§ 425.16, subd. (b)(1); see *Equilon, supra,* 29 Cal.4th at p. 67; *Schaffer, supra,* 168 Cal.App.4th at pp. 1002, 1004.)

### 2. *Are Paragraphs 31(o) and 31(p) Merely Incidental?*

Having concluded that paragraphs 31(*o*) and 31(p) allege conduct protected by the SLAPP statute, we must consider whether the third and fourth causes of action arise from this activity, even though the activity constitutes a quantitatively small proportion of the total activity on which HAFCI's third and fourth causes of action are based.

■ In general, whether a cause of action is subject to a motion to strike under the SLAPP statute turns on whether the gravamen of the cause of action targets protected activity. (See *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79 [124 Cal.Rptr.2d 519, 52 P.3d 695].) If liability is not based on protected activity, the cause of action does not target the protected activity and is therefore not subject to the SLAPP statute. (*Ibid.*; see *Episcopal Church Cases* (2009) 45 Cal.4th 467, 478 [87 Cal.Rptr.3d 275, 198 P.3d 66] [allegation that "lurk[s] in the background" to explain why a rift between the parties arose]; *United States Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton LLP* (2009) 171 Cal.App.4th 1617, 1628 [90 Cal.Rptr.3d 669] [allegations about a law firm's protected communications for purposes of showing the firm had a conflict of interest]; *Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 414–417 [9 Cal.Rptr.3d 242] [defendant's advertising activity was merely incidental to plaintiff's causes of action for personal injury, where liability for those claims was based not on the advertising but on the product's failure to conform to the defendant's warranties and statements].) Here, however, the third and fourth causes of action are plainly based in part on protected activity, since they claim that Smith should be liable because he perpetrated the activity alleged in paragraphs 31(*o*) and 31(p).

Where, as here, a cause of action is based on both protected activity and unprotected activity, it is subject to section 425.16 " 'unless the protected conduct is "merely incidental" to the unprotected conduct.' " (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672 [35 Cal.Rptr.3d 31] (*Peregrine Funding*) [first prong of SLAPP analysis met where the allegations of loss resulting from protected activity were not merely incidental or collateral to unprotected activity]; see *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 104 [15 Cal.Rptr.3d 215] (*Mann*) [because the defendants' reports to government agencies formed a substantial part of the factual basis for defamation and trade libel claims, the claims were subject to the SLAPP statute even though also based on nonprotected statements].)[7]

As we explain, the protected activity alleged in HAFCI's third and fourth causes of action is not merely incidental to the nonprotected activity or to HAFCI's claims. Because *each* of the subparagraphs of paragraph 31 purports to identify a breach of Smith's fiduciary duties, subparagraphs (*o*) and (p) could each be the sole and adequate basis for liability under the cause of action, even if HAFCI could not prove any of the other subparagraphs. (See *Salma v. Capon, supra,* 161 Cal.App.4th at p. 1287 (*Salma*) [mixed causes of action are subject to a special motion to strike under § 425.16 if "at least one of the underlying acts is protected conduct"].)

If paragraphs 31(*o*) and 31(p) had been the only acts alleged in the third cause of action, the cause of action would certainly be subject to the SLAPP statute, under the theory that premising liability on those acts would chill the exercise of free speech and petition. On the other hand, the pleading of other, indeed numerous other, indisputably, "unprotected" theories of liability does not eliminate or reduce the chilling effect on the exercise of free speech and petition: defendants still face the burden of litigation and potential liability for acts deemed protected by the SLAPP statute. (See *Fox Searchlight Pictures, Inc. v. Paladino, supra,* 89 Cal.App.4th at p. 308 ["a plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label

---

[7] The trial court in the instant case found that "the gravamen of the third and fourth causes of action is that defendant Smith mismanaged plaintiff and Happening House Ventures and engaged in self-dealings [and] that the allegations that are the subject of this motion are incidental to those causes of action . . . ." That may be a correct articulation of the gravamen of the cause of action, but it does not resolve the issue of whether appellants satisfied the first prong of the SLAPP statute, since liability was based on protected and nonprotected activity. Appellants urge that both *Peregrine Funding, supra,* 133 Cal.App.4th at pages 671, 673, and footnote 9, and *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1288, footnote 5 [74 Cal.Rptr.3d 873], indicate that the gravamen test is not to be applied to mixed causes of action. We would state it somewhat differently: where the defendant shows that the gravamen of a cause of action is based on nonincidental protected activity as well as nonprotected activity, it has satisfied the first prong of the SLAPP analysis.

of one 'cause of action' "].) We conclude paragraphs 31(*o*) and 31(p) are not merely incidental to the third and fourth causes of action.

The thrust of HAFCI's argument—and perhaps the concern underlying the trial court's ruling—is that the protected activity in the third and fourth causes of action is contained in only two out of 16 allegations of breaches of fiduciary duty, and therefore constitutes a comparatively small proportion of the wrongdoing alleged. HAFCI notes correctly that the SLAPP statute is intended to deter lawsuits "brought *primarily* to chill the valid exercise" of First Amendment rights of free speech and petition. (§ 425.16, subd. (a), italics added.) This does not suggest, however, that we need only make a quantitative comparison of allegations of protected versus nonprotected activity.

*Salma* and *Peregrine Funding*, fairly recent cases from this appellate district, each ruled that allegations of protected activity as part of the basis for liability justified striking the causes of action under the SLAPP statute. As HAFCI points out, however, the protected activity in those cases constituted much of the defendants' alleged wrongdoing; furthermore, neither *Salma* nor *Peregrine Funding* addressed the propriety of striking an entire cause of action based on proportionately few allegations of protected activity.

For example, in *Peregrine Funding, supra,* 133 Cal.App.4th 658, the plaintiffs alleged that a law firm committed malpractice and aided and abetted a breach of fiduciary duty, based on the law firm's legal advice, its efforts on behalf of its clients to block an SEC (Securities and Exchange Commission) investigation and provisional relief, and assisting its client's exit from a Ponzi scheme. (*Id.* at p. 668.) The law firm filed a special motion to strike, arguing that the plaintiffs' claims arose from the firm's protected speech and litigation activity. (*Ibid.*) As to the representation of the clients in the SEC action, some of the law firm's conduct (e.g., failing to disclose conflicts of interest and turn over client documents) was in the nature of speech or petitioning activity, but other aspects of its conduct was in furtherance of the exercise of the constitutional right of petition (e.g., opposing SEC efforts to obtain restraining orders and appoint receiver, stopping a deposition), as litigation tactics to benefit its client in an ongoing lawsuit. (*Id.* at pp. 670–672.) The court decided that the cause of action was subject to section 425.16: "We cannot conclude these allegations of classic petitioning activity are merely incidental or collateral to plaintiff[s'] claims against [the law firm]. The complaint alleges plaintiffs suffered substantial losses due to [the law firm's] conduct in delaying resolution of the SEC investigation and lawsuit and its legal strategies opposing early provisional relief." (*Peregrine Funding,* at p. 673.) The court ruled: "Because we conclude both of plaintiffs' claims are based *in*

*significant part* on [the law firm's] protected petitioning activity in the SEC litigation," the first prong of the SLAPP analysis was met. (*Id.* at p. 675, italics added.)[8]

In *Salma, supra,* 161 Cal.App.4th 1275, Salma's cross-complaint against Capon included causes of action for conversion and intentional interference with prospective economic advantage, based on Capon's filing a notice of lis pendens and a notice of rescission of a sales agreement, naming Salma's lenders as defendants, contacting the police and other city departments, and trespassing on Salma's property. (*Id.* at pp. 1281, 1285, 1295.) Capon filed a SLAPP motion to strike. (*Id.* at p. 1281.) As to the cause of action for intentional interference, the court ruled that all of the underlying acts except the trespass constituted activity protected under the SLAPP statute. Asserting that a mixed cause of action is subject to section 425.16 if at least one of its underlying acts constitutes protected conduct, the court found the claims subject to the SLAPP statute because the allegations of protected conduct were not merely incidental and instead represented "the *bulk* of the allegations underlying the cause of action." (*Salma,* at p. 1288, italics added.)

■ While *Peregrine Funding* and *Salma* can be distinguished, they are consistent with our conclusion that HAFCI's third and fourth causes of action arise out of the protected activity alleged in paragraphs 31(*o*) and 31(p). For the reasons we discussed *ante,* the mere fact that there are numerically far fewer allegations of protected wrongdoing than there are allegations of nonprotected wrongdoing does not mean that the allegations of protected activity are merely *incidental* to either the causes of action or the nonprotected activity. To the contrary, they are still acts for which HAFCI asserts liability and seeks damages. The inclusion of those allegations, which provide an independent basis for liability, compels further scrutiny into their merit in the second prong of the SLAPP analysis in order to uphold the purposes of the SLAPP statute.

---

[8] Quoting *Mann,* the court in *Peregrine Funding* stated that a mixed cause of action will be subject to section 425.16 unless the protected conduct is merely incidental to the nonprotected conduct. (*Peregrine Funding, supra,* 133 Cal.App.4th at p. 672, quoting *Mann, supra,* 120 Cal.App.4th at p. 103.) The court in *Peregrine Funding* ultimately ruled that the protected activity was not merely incidental to the plaintiffs' *claims.* (*Peregrine Funding,* at p. 673.) There may be a distinction between whether "protected conduct is 'merely incidental' to the *unprotected conduct* . . ." (*Mann, supra,* 120 Cal.App.4th at p. 103, italics added) and whether the protected conduct is "merely incidental or collateral to plaintiff's *claims*" (*Peregrine Funding, supra,* 133 Cal.App.4th at p. 673, italics added). Neither the court in *Peregrine Funding* nor the parties in this case elaborate on the possible distinction, or suggest it might have any relevance to this case.

## C. *Second Prong: Probability of Success on the Merits*

■ Having concluded that the first prong SLAPP analysis was satisfied, we turn to the second prong: whether HAFCI satisfied its burden of demonstrating that it was probable it would prevail. (*Equilon, supra*, 29 Cal.4th at p. 67.) The test that ordinarily would be used to determine whether HAFCI satisfied its burden is set forth in *Mann*: "[A] cause of action may only be stricken under the anti-SLAPP statute if it arises from protected speech or petitioning activity and lacks even minimal merit. [Citation.] Where a cause of action refers to both protected and unprotected activity and a plaintiff can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless and will not be subject to the anti-SLAPP procedure. [¶] Stated differently, the anti-SLAPP procedure may not be used like a motion to strike under section 436, eliminating those parts of a cause of action that a plaintiff cannot substantiate. Rather, once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands." (*Mann, supra*, 120 Cal.App.4th at p. 106, original italics.)

Here, HAFCI did not demonstrate it was probable that it would prevail on any part of its third or fourth cause of action. Indeed, HAFCI did not even discuss the second prong of the SLAPP test in its briefing in the trial court or in its briefing to this court.[9] Because HAFCI failed to carry its burden of demonstrating it was probable it would prevail, the trial court should have granted the motion to strike. (*Equilon, supra*, 29 Cal.4th at p. 67.)

Our concurring and dissenting colleague agrees that the third and fourth causes of action in HAFCI's complaint were based on protected activity and that the first prong of the SLAPP statute was satisfied. However, our colleague believes the *Mann* case was decided incorrectly, and he presents an alternate method of determining whether a plaintiff who has alleged a mixed cause of action based on protected and nonprotected activity should be deemed to have carried his burden of demonstrating a probability of prevailing. With respect, we cannot agree with our colleague's analysis.

First, as we have noted, HAFCI did not even attempt to satisfy its burden under the second prong of the SLAPP analysis. Therefore, validity of the *Mann* analysis (or any other analysis) is not really before us.

Second and more fundamentally, the SLAPP statute has been litigated heavily since its enactment in 1992 (Stats. 1992, ch. 726, § 2, p. 3523), and

---

[9] At oral argument, counsel for HAFCI tried to argue the evidence in the record was sufficient to satisfy the second prong of the SLAPP statute. We do not consider arguments that are raised for the first time at oral argument. (*McCarty v. Department of Transportation* (2008) 164 Cal.App.4th 955, 986, fn. 11 [79 Cal.Rptr.3d 777].)

the Legislature has not hesitated to amend the statute when it believed courts were interpreting it incorrectly. (See, e.g., Stats. 2005, ch. 535, § 3 ["It is the intent of the Legislature, in amending subdivision (f) of Section 425.16 of the Code of Civil Procedure, to overrule the decisions in *Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382, 1387–1390 [129 Cal.Rptr.2d 892], and *Fair Political Practices Commission v. American Civil Rights Coalition, Inc.* (2004) 121 Cal.App.4th 1171, 1174–1178 [18 Cal.Rptr.3d 157]."].) Furthermore, because the Legislature has amended section 425.16, *twice* since *Mann* was decided (see Stats. 2005, ch. 535, § 1; Stats. 2009, ch. 65, § 1), the doctrine of legislative acquiescence has application. (See *Olmstead v. Arthur J. Gallagher & Co.* (2004) 32 Cal.4th 804, 816 [11 Cal.Rptr.3d 298, 86 P.3d 354].) Given this situation, we believe the more prudent course is to leave the issue of the continuing viability of *Mann* to a future case where it is squarely presented for decision.

## III. DISPOSITION

The order denying the SLAPP motion is vacated and the trial court is directed to enter a new order granting the motion. Because HHV and Smith should have prevailed on the SLAPP motion, they are also entitled to the fees and costs they incurred both in the trial court and on appeal. (§ 426.16, subd. (c); *Anschutz Entertainment Group, Inc. v. Snepp* (2009) 171 Cal.App.4th 598, 643 [90 Cal.Rptr.3d 133].) The trial court should determine the amount.

Bruiniers, J., concurred.

**NEEDHAM, J.,** Concurring and Dissenting.—I concur that the trial court erred with respect to the first prong of the anti-SLAPP analysis. I further concur that Haight Ashbury Free Clinics, Inc. (HAFCI), failed to establish a probability of success on the merits of its third and fourth causes of action based on the protected activity alleged in paragraphs 31(*o*) and 31(p). I dissent, however, as to the majority opinion's ruling that the third and fourth causes of action must be stricken in their *entirety*, as sought in appellants' motion, even though only two of the 16 bases for liability had anything to do with the type of activity the anti-SLAPP (strategic lawsuit against public participation) statute was intended to protect. Such a result grossly miscasts the purpose of the anti-SLAPP law and grants a windfall to appellants.

I begin with a discussion of the second prong of the analysis for special motions to strike under the anti-SLAPP statute, because it is critical to understanding the problem that arises when a cause of action is based on allegations of both protected activity and unprotected activity.

A. *Determining Probability of Success on the Merits in a Mixed Cause of Action*

Once a defendant has made a threshold showing that the plaintiff's cause of action arises from the defendant's free speech or petitioning activity, the burden shifts to the plaintiff to establish a probability of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) Where, as here, the cause of action is based on allegations of nonprotected activity as well as allegations of protected activity, the question arises whether the plaintiff might satisfy this burden by showing it could prevail based on any of the allegations underlying the causes of action, or whether it must show it could prevail based on the allegations of protected activity alone.

The majority opinion adopts the rule set forth in *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 106 [15 Cal.Rptr.3d 215] (*Mann*).[1] In *Mann*, the court ruled that, where a cause of action is based on both protected and nonprotected activity, the plaintiff needs to show in the second prong of the anti-SLAPP analysis only that it has a probability of prevailing on *any part* of its claim, whether it be by showing some merit to the allegations of protected activity or some merit to the allegations of nonprotected activity. (*Mann, supra,* 120 Cal.App.4th at pp. 100, 106.)[2]

---

[1] The majority opinion does not rebut my analysis of *Mann*, but suggests I should not write about it, claiming that the "validity of the *Mann* analysis (or any other analysis) is not really before us" in light of HAFCI's failure to try to satisfy its burden under the second prong of the anti-SLAPP analysis. (Maj. opn., *ante,* at p. 1554.) However, the majority quotes the rule set forth in *Mann* and embraces it as "[t]he test that ordinarily would be used." (Maj. opn., *ante,* at p. 1554.) I believe it should not be. Moreover, my discussion of *Mann* is not for the purpose of deciding whether HAFCI met its burden on the second prong, but to help demonstrate the unreasonableness of striking the entirety of the causes of action—which the majority opinion directs the trial court to do. The majority opinion also notes that the Legislature has had the opportunity to amend the anti-SLAPP statute if it thought courts were interpreting it incorrectly. (Citing *Olmstead v. Arthur J. Gallagher & Co.* (2004) 32 Cal.4th 804, 816 [11 Cal.Rptr.3d 298, 86 P.3d 354] [where legislative history expressly acknowledged court decisions deciding an issue].) However, no published decision has ruled whether an entire cause of action must be stricken under the circumstances now before us. The issue has therefore not been brought to the Legislature's attention—until now—and its silence up to this point tells us nothing. The matter is squarely before us in this case, the parties addressed the remedy at oral argument after our letter request, and we should deal with it.

[2] The court in *Mann* stated: "Where a cause of action refers to both protected and unprotected activity and a plaintiff can show a probability of prevailing on *any part of its claim,* the cause of action is not meritless and will not be subject to the anti-SLAPP procedure. [¶] Stated differently, the anti-SLAPP procedure may not be used like a motion to strike under section 436, eliminating those parts of a cause of action that a plaintiff cannot substantiate. Rather, once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands. Thus, a court need not engage in the time-consuming task of determining whether the plaintiff

I cannot agree with *Mann* on this point. The upshot of *Mann* is that a plaintiff may freely make utterly meritless attacks on a defendant's exercise of free speech and petition, if the plaintiff has also alleged some nonprotected activity that supports the cause of action. This is plainly inconsistent with the anti-SLAPP statute's purpose of curbing lawsuits that chill the valid exercise of free speech. As the court in *Peregrine Funding* remarked in another context: "Where, as here, a cause of action alleges the plaintiff was damaged by specific acts of the defendant that constitute protected activity under the statute, it defeats the letter and spirit of section 425.16 to hold it inapplicable because the liability element of the plaintiff's claim may be proven without reference to the protected activity." (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLC* (2005) 133 Cal.App.4th 658, 674 [35 Cal.Rptr.3d 31].)

Given the overriding statutory purpose, the language of the anti-SLAPP statute confirms that a plaintiff can save his claim of liability based on protected activity only if he establishes a modicum of merit to that particular claim. Subdivision (b)(1) of Code of Civil Procedure section 425.16 provides: "A *cause of action* against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue *shall be subject to a special motion to strike, unless* the court determines that the plaintiff has established that there is a probability that *the plaintiff will prevail on the claim.*" (Italics added.) Thus, while stating that a "cause of action" targeting protected activity may be stricken, the statute allows the plaintiff to avoid that consequence by showing a probability of prevailing on "the *claim.*" (§ 425.16, subd. (b)(1), italics added.) Assuming, as we must, that the Legislature had something in mind when it used the word "claim" as opposed to "cause of action," the reasonable reading of the statute is that the plaintiff must show a probability of prevailing on the "claim" of liability that is premised on the protected activity, not the "cause of action" on some other basis.

Furthermore, *Mann* itself leads me to believe that the view stated in that case is incorrect. The court in *Mann* concluded a plaintiff establishes that its cause of action has merit if it shows a probability of prevailing on "any part of its claim." (*Mann, supra,* 120 Cal.App.4th at p. 106.) As mentioned, however, the anti-SLAPP statute requires that the plaintiff show a probability of prevailing not on "any part of its claim" (120 Cal.App.4th at p. 106) or any part of its cause of action, but particularly on "the claim" (Code Civ. Proc., § 425.16, subd. (b)(1)), referring to the allegations targeting protected

---

can substantiate all theories presented within a single cause of action and need not parse the cause of action so as to leave only those portions it has determined have merit." (*Mann, supra,* 120 Cal.App.4th at p. 106, original italics.)

activity. In other words, the Legislature intended that the plaintiff demonstrate some minimal indication of merit to the allegations that target the particular activity the anti-SLAPP statute intended to protect.

The court in *Mann* also expressed its concern that a trial court not have to "engage in the time-consuming task of determining whether the plaintiff can substantiate all theories presented within a single cause of action and need not parse the cause of action so as to leave only those portions it has determined have merit." (*Mann, supra*, 120 Cal.App.4th at p. 106.) This concern, however, is misplaced. If the plaintiff is required to demonstrate merit to his cause of action based on the allegations of protected activity, the trial court would not have to determine the merits of "all theories," but only those premised on protected activity. Indeed, this may often be a simpler task than having to consider the merit of theories based on nonprotected activity. In the matter before us, for example, *Mann* would result in the trial court considering the merits of as many as 14 breaches of fiduciary duty based on nonprotected activity, rather than no more than two breaches of fiduciary duty based on protected activity.

Lastly, the court in *Mann* pointed out that "a defendant has other options to eliminate theories within a cause of action that lack merit or cannot be proven," such as a motion to strike under Code of Civil Procedure section 436 or a motion for summary adjudication. (*Mann, supra*, 120 Cal.App.4th at p. 106.) The fact that a defendant may have other ways of removing the allegations of protected activity from the case, however, is immaterial. After all, it was the insufficiency of these other procedural mechanisms that motivated our Legislature to enact the anti-SLAPP statute in the first place. Forcing a defendant to go to the expense, time and effort to remove the allegations in other ways does nothing to curb the chilling effect on the exercise of free speech and petition rights, and is precisely what the anti-SLAPP statute was intended to avoid.

Based on the language and purpose of the anti-SLAPP statute, a plaintiff should have to demonstrate, with admissible evidence, a probability that it would prevail on its cause of action arising from protected activity, based on its allegations of protected activity. (Indeed, HAFCI has not contended otherwise in this case.)

### B. *Effect of a Minority of Severable Allegations of Protected Activity*

If a plaintiff establishes a probability of prevailing on its cause of action, based on its allegations of protected activity, the motion to strike will be denied. If, on the other hand, the plaintiff does not establish a probability of prevailing, the question becomes whether, as appellants contend, the entirety of the cause of action must be stricken without leave to amend.

More specifically, in the context of a mixed cause of action, the following question arises: must a cause of action, based almost wholly on nonprotected activity, be stricken in its *entirety*, without leave to amend, where it was also based on much fewer and severable allegations of protected activity? Or, to put it slightly differently, may a defendant use the anti-SLAPP statute as a weapon to knock out permanently an entire cause of action that the plaintiff had supported with numerous allegations of nonprotected wrongdoing, merely because the plaintiff had also alleged (and, in this case, offered to delete) allegations of protected activity?

The answer must be no. Even if a plaintiff cannot show that it could prevail on its cause of action based on its allegations of protected activity, it makes neither good sense nor good policy to strike the cause of action in its *entirety*, with prejudice, where there may well be ample evidence of a breach of fiduciary duty based on nonprotected activity.[3] After all, if the plaintiff had alleged one cause of action for breach of fiduciary duty based solely on nonprotected activity, and a second cause of action for breach of fiduciary duty based solely on protected activity, obviously only the second of those causes of action would be stricken. There is no reason to foreclose the equivalent result where the allegations have been combined in a single cause of action. Never was it the purpose of the anti-SLAPP statute to allow a defendant to force a trial court to throw out allegations that are neither subject to the statute nor posing any risk of chilling the exercise of constitutional rights of free speech and petition.

Where, as here, protected activity is alleged as an independent and alternative basis for liability in a cause of action, the inappropriate forfeiture of the entire cause of action might conceivably be avoided in one of two ways: (1) striking the entire cause of action, but permitting the plaintiff to amend the complaint solely to reallege the cause of action without the allegations of unsupported protected activity; or (2) striking just the allegations of protected activity for which the plaintiff has not shown a prima facie case. Both approaches accomplish the same equitable result.

### 1. *Amendment Solely to Repeat Cause of Action Without Protected Activity*

Permitting the plaintiff to amend the complaint solely to reassert the same cause of action, without the allegations that had targeted protected activity, accomplishes the purposes of the anti-SLAPP statute. The offending allegations are removed, and the case proceeds on the causes of action based on

---

[3] There is no provision in the anti-SLAPP statute requiring a plaintiff to demonstrate the merit of its allegations of *non*protected activity.

activities not subject to the anti-SLAPP statute. To the extent the defendant has incurred attorney fees and costs on its motion to strike, they are recoverable under Code of Civil Procedure section 425.16, subdivision (c).

I am mindful that, in a vastly different context, it has been held that a plaintiff should not be allowed to amend its complaint after an anti-SLAPP motion has been granted. (*Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073 [112 Cal.Rptr.2d 397] (*Simmons*); see also *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1054–1056 [18 Cal.Rptr.3d 882] [filing of first amended complaint pursuant to Code Civ. Proc., § 472 before the hearing on the anti-SLAPP motion to strike did not render the motion to strike moot].) *Simmons* is plainly inapposite.

In *Simmons*, the appellant had filed a cross-complaint alleging that the respondent conspired to force him out of business by filing frivolous lawsuits, waging a media war, and making defamatory statements and refusing to pay claims. (*Simmons, supra*, 92 Cal.App.4th at p. 1071.) In the published portion of the opinion, the court addressed the appellant's request for leave to amend the cross-complaint. The court opined that "[a]llowing a SLAPP plaintiff leave to amend the complaint once the court finds the prima facie showing has been met would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy." (*Simmons*, at p. 1073.) "Instead of having to show a probability of success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading. This would trigger a second round of pleadings, a fresh motion to strike, and inevitably another request for leave to amend." (*Ibid.*) "By the time the moving party would be able to dig out of this procedural quagmire, the SLAPP plaintiff will have succeeded in his goal of delay and distraction and running up the costs of his opponent. . . . This would totally frustrate the Legislature's objective of providing a quick and inexpensive method of unmasking and dismissing such suits." (*Id.* at p. 1074, citation omitted.) The court concluded: "the omission of any provision in section 425.16 for leave to amend a SLAPP complaint was not the product of inadvertence or oversight." (92 Cal.App.4th at p. 1074.)

The concerns articulated in *Simmons* would certainly not be implicated by allowing the plaintiff to *re*allege a cause of action, this time without the allegations of protected activity. Here plaintiff has already alleged nonprotected activity, as well as protected activity, as a basis for the cause of action. Permitting a plaintiff to reallege his cause of action based solely on the nonprotected activity he had already alleged would not give the plaintiff any new opportunity to disguise a vexatious lawsuit or compel another anti-SLAPP motion; it would merely make the "punishment" fit the plaintiff's

"crime." While the Legislature might well have wanted to avoid granting leave to amend in the context and manner described by *Simmons*, there is no compelling reason to conclude it would frown on the reinstatement of previous allegations that had not been challenged by the defendant or, in any event, pose no threat to the purposes of the anti-SLAPP statute.

Although not on point factually, *Nguyen-Lam v. Cao* (2009) 171 Cal.App.4th 858, 870–873 [90 Cal.Rptr.3d 205] (*Nguyen-Lam*), is instructive. In *Nguyen-Lam*, the plaintiff sued the defendant for slander, and the defendant filed an anti-SLAPP motion. (*Id.* at p. 864.) As to the first prong of the anti-SLAPP analysis, the trial court concluded that the allegedly slanderous statement was protected under the anti-SLAPP statute, but as to the second prong of the analysis ruled that the evidence showed a probability the plaintiff would prevail on the claim that the defendant had slandered the plaintiff with actual malice. (*Id.* at pp. 865–866.) The problem was, the plaintiff had apparently not *alleged* actual malice in the complaint. (*Id.* at pp. 862, 865–866.) The trial court allowed the plaintiff to amend the complaint to allege actual malice and (effectively) denied the anti-SLAPP motion. (*Id.* at pp. 862, 866.)

The appellate court affirmed, distinguishing *Sylmar* and *Simmons*. Distinguishing *Sylmar*, the court noted that the plaintiff in *Nguyen-Lam* was not avoiding or frustrating a hearing on an anti-SLAPP motion. (*Nguyen-Lam, supra*, 171 Cal.App.4th at pp. 871–872.) The same must be said in this case regarding leave to reallege the cause of action based solely on nonprotected activity.

Distinguishing *Simmons*, the court in *Nguyen-Lam* explained that the amendment in *Nguyen-Lam* was merely to permit the plaintiff to allege actual malice for which there was evidence. Because the plaintiff demonstrated a probability of prevailing based on the evidence, the action was not a SLAPP, and therefore amendment of the complaint should not be precluded. (*Nguyen-Lam, supra*, 171 Cal.App.4th at p. 871.) Of most interest to the matter at hand, the court in *Nguyen-Lam* also rejected the notion that *Simmons* established a per se bar to amendments after rulings on anti-SLAPP motions, and suggested the legislative purpose of the anti-SLAPP statute should determine the extent to which amendment should be permitted. (*Id.* at pp. 872–873.) As stated *ante*, the availability of leave to reinstate a cause of action, without the allegations of protected activity, is consistent with the purposes of the anti-SLAPP statute.[4]

---

[4] In *Salma v. Capon* (2008) 161 Cal.App.4th 1275 [74 Cal.Rptr.3d 873], Salma amended his cross-complaint before the trial court ruled on Capon's anti-SLAPP motion to strike. After concluding that Salma's original claims were subject to dismissal, we ruled that the amended claims would also be subject to automatic dismissal, because requiring the trial court to

### 2. *Striking Unsupported Allegations of Protected Activity*

Perhaps the most direct and efficient solution is simply to strike the specific allegations of protected activity for which a plaintiff is unable to show a probability of success on the merits. In this way, without the need for any amendment to the pleading, the intent of the anti-SLAPP statute will be met, the plaintiff will be able to proceed on a cause of action not subject to the anti-SLAPP statute, and the defendant will not obtain a windfall.

In considering a different issue, the court in *Mann* remarked that "the anti-SLAPP procedure may not be used like a motion to strike under [Code of Civil Procedure] section 436, eliminating those parts of a cause of action that a plaintiff cannot substantiate." (*Mann, supra*, 120 Cal.App.4th at p. 106.) As explained *ante*, however, the concern in *Mann* was that a trial court should not have to be saddled with the "time-consuming task of determining whether the plaintiff can substantiate *all* theories presented within a single cause of action." (*Ibid.*, italics added.) That concern does not arise where, as I propose, the trial court merely decides whether the plaintiff showed a prima facie case of liability based on the protected activity and, if not, strikes the allegations of protected activity.

My conclusion is also consistent with the language of the anti-SLAPP statute. The statute provides that a cause of action arising from protected activity is "subject to a special motion to strike" unless the plaintiff has shown a probability of prevailing on his claim. (Code Civ. Proc., § 425.16, subd. (b)(1).) Nowhere does it require the entirety of a cause of action to be stricken. Nor does it preclude striking just part of a cause of action or specific allegations. Moreover, the Legislature's reference to a "cause of action" cannot mean that a court would be helpless to do anything other than strike the entirety of the cause of action, if it led to a result contrary to the anti-SLAPP statute's purpose.

Indeed, my conclusion is fully supported by the purpose of the anti-SLAPP statute: to strike meritless assertions of liability based on protected activity, but only meritless assertions of liability based on protected activity, in order to curb the discouragement of the valid exercise of constitutional rights to free speech and petition.

I therefore conclude: where a single cause of action asserts liability based on a list of wrongful acts, some of which constitute protected activity under

---

analyze the amended claims would cause "the evils identified in *Simmons*" and run counter to the statutory purpose of early disposition of claims. (*Id.* at pp. 1294–1295.) We did not consider the propriety of permitting a limited amendment under the circumstances of the matter now before us, which does not present the evils with which we were concerned in *Salma*.

Code of Civil Procedure section 425.16, subdivision (e), and some of which do not, and the plaintiff fails to demonstrate a probability of success based on the allegations of protected activity, the trial court should strike the unsupported allegations of protected activity from the cause of action and leave the balance of the cause of action intact.[5]

A petition for a rehearing was denied June 23, 2010. Needham, J., was of the opinion that the petition should be granted. Respondent's petition for review by the Supreme Court was denied September 1, 2010, S184232. Kennard, J., and Corrigan, J., were of the opinion that the petition should be granted.

---

[5] Tellingly, the striking of paragraphs 31(*o*) and 31(p) is what appellants requested before filing their motion to strike, and what respondent agreed to shortly after it was filed.