Filed 9/30/14  Tour-Sarkaissian v. White CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CHRISTINE TOUR-SARKISSIAN et al.,<br><br>　　Cross-complainants and Respondents,<br><br>v.<br><br>BRADLEY R. WHITE,<br><br>　　Cross-defendant and Appellant. | A136812<br><br>(San Francisco City and County Super. Ct. No. CGC-11-516404) |
| CHRISTINE TOUR-SARKISSIAN et al.,<br><br>　　Cross-complainants and Appellants,<br><br>v.<br><br>CHRISTINA M. SAGONOWSKY et al.,<br><br>　　Cross-defendants and Respondents. | A136874<br><br>(San Francisco City and County Super. Ct. No. CGC-11-516404) |

Attorney Bradley R. White filed on behalf of his client, Christina M. Sagonowsky, individually and as Executor for the Estate of Leocadia Sagonowsky (Sagonowsky), a complaint for, among other things, legal malpractice against the Tour-Sarkissian Law Offices, LLP (Tour-Sarkissian), and four attorneys at this law office, Christine Tour-Sarkissian (Christine), Paul Tour-Sarkissian, Abigail Morris, and Phil Foster (collectively, defendants).  Defendants filed a cross-complaint with 15 causes of action against Sagonowsky and White, which were based on alleged misrepresentations by Sagonowsky and White that resulted in the law firm's agreeing to provide legal

1

representation to Sagonowsky in her pending litigation.  The law firm was injured because, contrary to her promises, Sagonowsky did not reimburse the firm for the costs of litigation and did not pay attorney fees due under the retainer agreements.

Pursuant to the provisions of California's anti-strategic lawsuit against public participation (anti-SLAPP) statute (Code Civ. Proc., § 425.16),[1] Sagonowsky and White filed separate special motions to strike various allegations in the cross-complaint and the motions were heard by two different judges.  One judge granted Sagonowsky's motion and another judge denied White's motion.  Defendants appeal the order granting Sagonowsky's special motion to strike, and White appeals the order denying his special motion to strike.  At the parties' request, we consolidated these appeals.

We conclude that the anti-SLAPP statute does not apply to Tour-Sarkissian's pleading.  Accordingly, we reverse the order granting Sagonowsky's motion to strike, and affirm the order denying White's special motion to strike.

## BACKGROUND

### The Complaint and Cross-Complaint

In May 2009, Sagonowsky and White met with Tour-Sarkissian seeking to have the law firm represent Sagonowsky in her marital dissolution action (the divorce action)[2] and in a derivative civil action against Sagonowsky's ex-husband (the civil action).[3]  At that time, Sagonowsky was in propria persona in both of these actions.  According to White, he advised Sagonowsky about selecting Tour-Sarkissian to represent her and provided documents to Tour-Sarkissian, which included pleadings, discovery, and evidence for both the divorce and civil actions.  According to Christine, White introduced himself as Sagonowsky's boyfriend/fiancé.  She declared that White disclosed that he was a worker's compensation attorney and that Sagonowsky and he "were unequivocal

---

[1] All further unspecified code sections refer to the Code of Civil Procedure.

[2] *Sagonowsky v. Kekoa,* San Francisco County Superior Court, case No. FDI-03-755091.

[3] *Sagonowsky v. Kekoa,* San Francisco County Superior Court, case No. CGC-07-463799.

2

that White was not representing Sagonowsky in either the civil action or the marital dissolution."

Tour-Sarkissian and Sagonowsky executed two separate retainer agreements in May 2009.  About 19 months later, Tour-Sarkissian believed that Sagonowsky had made untrue representations to defendants.  Tour-Sarkissian withdrew as Sagonowsky's attorney of record in the marital dissolution action on December 21, 2010, and withdrew from the civil action on January 10, 2011.

On December 7, 2011, White, on behalf of Sagonowsky, filed a complaint against defendants for, among other things, legal malpractice and breach of fiduciary duty.  On March 28, 2012, Sagonowsky filed an amended complaint against defendants for professional negligence, breach of fiduciary duty, intentional infliction of emotional distress, breach of contract, negligence per se and constructive fraud, and violation of the Unfair Business Practices.

On April 27, 2012, defendants filed a cross-complaint for damages against Sagonowsky and White and, on June 12, 2012, filed a first amended cross-complaint (FACC), the operative pleading.  Although the FACC named all of the defendants as cross-complainants, only Tour-Sarkissian is listed as the claimant for each cause of action.[4]  These causes of action included two claims for breach of written contract (1st and 7th causes of action), two claims for breach of covenant of good faith and fair dealing (2nd and 8th causes of action), a claim for account stated (3rd cause of action), two claims for quantum meruit (4th and 9th causes of action), two claims for promissory estoppel (5th and 10th causes of action), two claims for declaratory relief (6th and 11th cause of action), one claim for intentional misrepresentation (12th cause of action), one claim for concealment (13th cause of action), one claim for negligent misrepresentation (14th cause of action), and one claim for promissory fraud (15th cause of action).  All of the claims were against Sagonowsky and the 12th through 15th causes of action were also against White.

_____

[4] Unless a fact or action can be directly attributed to defendants or to one of the individual defendants, we refer solely to Tour-Sarkissian.

3

The FACC alleged that White was "claiming to be the fiancé" of Sagonowsky and that Sagonowsky and White were "the agents, servants, de facto general partners, and employees of one another . . . ." It asserted that when Sagonowsky and White "solicited" Tour-Sarkissian to represent her, the divorce action had been pending in the court for approximately six years and the civil action against Sagonowsky's ex-husband had been pending for approximately two years. Tour-Sarkissian further alleged that Sagonowsky and White made false representations regarding their positions and evidence related to the civil and divorce actions in order to induce Tour-Sarkissian to represent Sagonowsky in her pending divorce and civil actions.[5] Tour-Sarkissian, according to the FACC, relied

---

[5] The specific misrepresentations by Sagonowsky and White regarding the divorce action alleged in the FACC were the following: "that Sagonowsky sought swift resolution of the marital dissolution through either trial or settlement"; "that Sagonowsky was not taking legal positions or asserting claims or defenses in the marital dissolution action without probable cause or for the purpose of harassing, annoying, or exacting revenge on Curtis Kekoa for Curtis Kekoa's desire to terminate his marriage with Sagonowsky"; "that Sagonowsky had ample documentary evidence as well as witnesses to support all of Sagonowsky's claims against Kekoa in the marital dissolution matter against Kekoa"; "that Sagonowsky had sufficient evidence to justify pursuing Sagonowsky's claims and defenses in the marital dissolution action"; "that Sagonowsky would cooperate at all stages of the marital dissolution litigation and would assist [Tour-Sarkissian] in getting up to speed with the huge volume of pleadings and correspondence"; and "that Sagonowsky would pay for all legal services provided to Sagonowsky by [Tour-Sarkissian] in the marital dissolution action; pay for all costs of suit and expenses associated with the pursuit of Sagonowsky's claims and defenses in the marital dissolution action; and immediately reimburse [Tour-Sarkissian] for all costs of suit and expenses advanced by [Tour-Sarkissian] on Sagonowsky's behalf in the marital dissolution action."

With regard to the civil action, the FACC alleged that Sagonowsky and White made the following misrepresentations: "that a final settlement between Sagonowsky . . . and Curtis Kekoa . . . was imminent"; "that the insurance carrier providing a defense for Curtis Kekoa had offered to settle the civil action" for approximately one million dollars; "that Sagonowsky only needed to retain [Tour-Sarkissian] as the attorneys of record . . . to obtain a trial continuance and finalize and maximize the imminent settlement in the approximate amount of $1 million, which, according to Sagonowsky and White, only experienced trial counsel such as [Tour-Sarkissian] could maximize effectively"; "that Sagonowsky desired and sought a final settlement of the civil action against Curtis Kekoa rather than to proceed to trial"; "that Sagonowsky would pay in advance all costs of suit

4

on these misrepresentations when it agreed to provide legal representation to Sagonowsky in these two lawsuits.

Tour-Sarkissian alleged in the FACC that it relied on Sagonowsky's misrepresentations that she would pay attorney fees and would reimburse the firm for costs in the two actions. Sagonowsky repeatedly affirmed, according to the FACC, her obligation and intent to pay for the legal services provided and the costs Tour-Sarkissian incurred on her behalf. Consequently, Tour-Sarkissian agreed to represent her and to continue advancing costs. Other than the $10,000 initial retainer fee, Sagonowsky, according to the FACC, failed and refused to pay for the legal services provided to her by Tour-Sarkissian in the divorce and civil actions or to pay for the costs of the lawsuits.[6] Tour-Sarkissian alleged that Sagonowsky owed it more than $763,965.25 for legal services rendered in the divorce action, and more than $42,397.23 for costs of the suit and

and other expenses associated with pursuing the civil action or otherwise immediately reimburse [Tour-Sarkissian] for all costs of suit and other expense advanced on Sagonowsky's behalf in the civil action"; "that the insurance carrier providing a defense for Curtis Kekoa in the civil action had agreed to settle the action for an approximate $1 million, in part, because Sagonowsky was in possession of evidence that ensured the success of the malicious prosecution causes of action against Curtis Kekoa"; "that the insurance carrier providing a defense for Curtis Kekoa in the civil action had agreed to settle the action for an approximate $1 million, in part, because Sagonowsky was in possession of evidence that ensured the success of the elder abuse causes of action against Curtis Kekoa"; "that the insurance carrier providing a defense for Curtis Kekoa in the civil action had agreed to settle the action for an approximate $1 million, in part, because Sagonowsky was in possession of evidence that ensured the success of the defamation cause of action against Curtis Kekoa"; "that Sagonowsky had ample documentary evidence as well as witnesses to support all of Sagonowsky's claims against Kekoa and others in the civil action"; "that Sagonowsky would cooperate with [Tour-Sarkissian] at all stages including but not limited to providing [Tour-Sarkissian] with all evidence and witnesses supporting Sagonowsky's claims"; and "that Sagonowsky was not prosecuting the civil action without probable cause or for the purpose of harassing, annoying, or exacting revenge on Curtis Kekoa for Curtis Kekoa's desire to terminate the marriage with Sagonowsky."

[6] Sagonowsky had agreed to pay on an hourly basis for the legal representation in the divorce action and on a contingency fee basis in the civil action.

5

other expenses advanced by Tour-Sarkissian. Sagonowsky owed Tour-Sarkissian, according to the FACC, $17,126.57 in costs for the civil action.

***Sagonowsky's Special Motion to Strike and Defendants' Notice of Appeal***

Sagonowsky filed a special motion to strike pursuant to section 425.16, subdivision (e) (anti-SLAPP) against Tour-Sarkissian's 2nd, 5th, 8th, 10th, and 12th through 15th causes of action.[7] Sagonowsky also sought an award of attorney fees against defendants.

Judge Curtis E.A. Karnow held a hearing on Sagonowsky's anti-SLAPP motion on September 19, 2012. Following the hearing, Judge Karnow issued an order requesting additional briefing because Sagonowsky "alluded to" *Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257 (*Tuszynska*), but failed to mention this case in her briefing. The parties submitted supplemental briefing.

On October 5, 2012, Judge Karnow issued an order granting Sagonowsky's special motion to strike. The court explained: "It is true that the content of business communications and negotiations do not usually involve the sort of First Amendment activity that triggers the scrutiny of [section] 425.16 [(e.g., *Blackburn v. Brady* (2004) 116 Cal.App.4th 670) (*Blackburn*)], but this general rule apparently gives way in the context of retaining attorneys. In the present case we know that the claims are focused directly on the communications involved in the hiring of attorneys, and thus *Tuszynska* requires me to hold that the claims here are subject to the special motion to strike, and that [Sagonowsky has made her] prima facie showing. [Citation.] Because [Tour-Sarkissian] ha[d] made no effort to satisfy the second prong—that is, to produce evidence in support of the allegations—I must grant the motion to strike."

On October 17, 2012, Judge Karnow issued an order reconsidering the October 5 order because he had failed to consider Tour-Sarkissian's argument that there was a reasonable probability that it would prevail on its claims. Judge Karnow concluded that the litigation privilege (Civ. Code, § 47, subd. (b)) applied under *Olsen v. Harbison*

---

[7] The motion in the record does not have a file stamp, but White, Sagonowsky's attorney, signed it on August 13, 2012.

6

(2010) 191 Cal.App.4th 325. The court adopted its prior order "save for the statement that [defendants] had made no argument on the second prong" and ruled that defendants had not satisfied the second prong of the anti-SLAPP test as they had not demonstrated a probability of prevailing on the merits. The court thus ruled that the 2nd, 5th, 8th, 10th, and 12th through 15th causes of action against Sagonowsky were stricken.

Defendants filed a timely notice of appeal from the order granting Sagonowsky's motion to strike and the reconsideration order.

***White's Special Motion to Strike and White's Notice of Appeal***

On June 1, 2012, White filed a special motion to strike pursuant to section 425.16, subdivision (e) against Tour-Sarkissian's 12th through 15th causes of action against him. In support of his motion, he submitted his declaration. He asserted that in April 2009, Sagonowsky did not have an attorney representing her in the divorce or civil action. He declared that he began providing legal advice to Sagonowsky concerning the retention of new counsel and the transition from Sagonowsky's prior attorneys to new counsel. He was present when Sagonowsky interviewed Christine and at subsequent meetings related to the hiring of Tour-Sarkissian.

Tour-Sarkissian filed opposition to White's special motion to strike. Attached to the opposition was a declaration by Christine.[8]

Judge Ernest H. Goldsmith held the hearing on White's anti-SLAPP motion on August 15, 2012. On this same date, the court issued its order denying White's special motion to strike. The court explained that White had not "met his threshold showing to satisfy the first prong" of section 425.16 as to the 12th through 15th causes of action of the cross-complaint. The court stated that White's statements made in order to retain defendants as counsel "did not 'occur in connection with "an issue under consideration or review" in the [underlying actions].' [Citation.]" The court found that White's representation of Sagonowsky "in the instant action and other matters do not pertain to the allegations in the cross-complaint. Further, the statements are not protected by the

---

[8] White filed evidentiary objections to the declaration of Christine; the trial court did not rule on these objections.

litigation privilege. [White] did not make the statements in contemplation of litigation against [defendants]. Rather, [White] made the statements in negotiations and to persuade [defendants] to represent [Sagonowsky] in the underlying actions. (*Haneline Pacific Properties, LLC v. May* (2008) 167 Cal.App.4th 311, 319."

White filed a timely notice of appeal.

### *Consolidation of the Appeals*

On January 3, 2013, upon the stipulated motion of all the parties, we ordered the consolidation of defendants' appeal and White's appeal for purposes of oral argument and decision only. The parties filed separate briefs for the two appeals.

### DISCUSSION

## I. *The Anti-Slapp Statute and Standard of Review*

Section 425.16, "commonly referred to as the anti-SLAPP statute" provides "for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 312, 315.) "The Legislature authorized the filing of a special motion to strike such claims, (§ 425.16, subds. (b)(1), (f)), and expressly provided that section 425.16 should 'be construed broadly.' (§ 425.16, subd. (a); see *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1119.) Such a motion requires a two-step process. First, the defendant must make a prima facie showing that the 'cause[s] of action . . . aris[e] from' the defendant's actions 'in furtherance of that [defendant's] right of . . . free speech . . . in connection with a public issue.' (§ 425.16, subd. (b)(1).) If a defendant meets this threshold showing, the plaintiff must establish 'a probability that the plaintiff will prevail on the claim[s].' [Citation.]" (*Id.* at pp. 315-316.)

Section 425.16, subdivision (e) specifies the type of activity protected by the anti-SLAPP statute. As relevant here,[9] an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a

---

[9] Sagonowsky and White argue that section 425.16, subdivision (e)(2) applies to Tour-Sarkissian's FACC.

8

public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, [or] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ." (§ 425.16, subd. (e).) Based on this provision, " 'statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest.' " (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1261 (*Neville*).)

"[T]he statutory phrase 'cause of action . . . arising from' means . . . that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) To determine whether the plaintiffs' claims arise from protected acts, we "examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies. . . ." (*Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 519-520.) We look to see whether the activity giving rise to the complaint constitutes " '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim[s]' " asserted in the lawsuit. (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272.) "In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).)

Where a cause of action is based on both protected activity and unprotected activity, it is subject to section 425.16 " 'unless the protected conduct is "merely incidental" to the unprotected conduct.' " (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672; see also *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1553-1554 (*Haight Ashbury Free Clinics*) [entire cause of action properly stricken where any part is protected and not merely "incidental" to unprotected claim].)

9

We review the trial court's ruling on an anti-SLAPP motion independently, and apply the de novo standard of review. (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 929.)

## II. *Tour-Sarkissian's Appeal*

Judge Karnow found that the 2nd, 5th, 8th, 10th, and 12th through 15th causes of action against Sagonowsky in the FACC arose from a protected activity and cited *Tuszynska, supra,* 199 Cal.App.4th 257 and *Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482 (*Taheri*). The order stated that Tour-Sarkissian's claims were "focused directly on the communications involved in the hiring of attorneys" and, since these communications were "in the context of retaining attorneys," they were covered by the anti-SLAPP statute under *Tuszynska*. We disagree. This case is a dispute over the failure to pay litigation costs and attorney fees and any allegations in the FACC referring to arguably protected activity were only incidental.

"[A] defendant in an ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant. [Citation.] ['[T]he statute does not accord anti-SLAPP protection to suits arising from any act having any connection, however remote, with an official proceeding'].) . . . [I]t is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." (*Martinez v. Matabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188.)

Sagonowsky contends that all of the causes of action that are the subject of the special motion to strike incorporated by reference Sagonowsky's alleged misrepresentations regarding the civil and divorce actions and several causes of action set forth these alleged misrepresentations in detail. Sagonowsky maintains that section 425.16, subdivision (e)(2) applies to all of these causes of action. She notes, "[A] statement is 'in connection with' litigation under section 425.16, subdivision (e)(2) if it

relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation," even though it is not made in the court proceeding itself. (*Neville, supra,* 160 Cal.App.4th at p. 1266.) She argues that the FACC makes it clear that Tour-Sarkissian relied on these misrepresentations when it decided to represent her in her two actions.

Contrary to Sagonowsky's position, the causes of action in the FACC are not covered by section 425.16, subdivision (e)(2) because Tour-Sarkissian is not seeking relief from Sagonowsky for her protected conduct. The principal thrust of the causes of action at issue in this appeal is that Sagonowsky made misrepresentations to get Tour-Sarkissian to represent her. Sagonowsky's misrepresentations about her lawsuits were evidence that she was attempting to induce Tour-Sarkissian to represent her, but the injury was that the law firm gave up other work to represent her and was not paid its fees or reimbursed for the costs.[10] (See, e.g., *Gallimore v. State Farm Fire & Casualty Ins.*

---

[10] Tour-Sarkissian asserts that section 425.16 does not apply to "breach of contract or fraud actions where the act of the party relates to the formation or performance of contractual obligations and not with respect to the exercise of the right of free speech." (*Ericsson GE Mobile Communications, Inc. v. C.S.I. Telecommunications Engineers* (1996) 49 Cal.App.4th 1591, 1601-1602, overruled on another issue in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 58-67 and disapproved in *Briggs v. Eden Council for Hope & Opportunity, supra,* 19 Cal.4th at p. 1123, fn. 10, and in *Navellier, supra,* 29 Cal.4th at pp. 91-95.) Tour-Sarkissian, however, ignores that the foregoing statement has been clearly rejected by our Supreme Court in *Navellier*. Our Supreme Court stated in *Navellier*: "Although *Ericsson* also questioned the applicability of section 425.16 to 'breach of contract or fraud actions where the act of the [defendant] relates to the formation or performance of contractual obligations and not . . . to the exercise of the right of free speech' (*Ericsson, . . .* at pp. 1601-1602), that comment cannot be reconciled with the plain language of the anti-SLAPP statute. Nothing in the statute itself categorically excludes any particular type of action from its operation, and no court has the ' "power to rewrite the statute so as to make it conform to a presumed intention which is not expressed." ' [Citation.] For us to adopt such a narrowing construction, moreover, would contravene the Legislature's express command that section 425.16 'shall be construed broadly.' (§ 425.16, subd. (a).)" (*Navellier,* at p. 92.) The court elaborated that "conduct alleged to constitute breach of contract may also come within constitutionally protected speech or petitioning." (*Ibid.*) Whether conduct is

*Co.* (2002) 102 Cal.App.4th 1388, 1399 [the plaintiff alleged the defendant insurance company had engaged in claims handling misconduct and violated statutory and regulatory rules and, although the plaintiff alleged defendant's communications to the Department of Insurance were evidence of wrongdoing, there were no allegations that those communications were wrongful in themselves or the cause of any injury to plaintiff]; *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1540 ["In a malpractice suit, the client is not suing because the attorney petitioned on his or her behalf, but because the attorney did not competently represent the client's interests while doing so"].)

It is not significant that Sagonowsky's misrepresentations were triggered by her pending civil and divorce actions. "[T]hat a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier, supra,* 29 Cal.4th at p. 89.) Section 425.16 " 'does not accord anti-SLAPP protection to suits arising from any act having any connection, however remote, with an official proceeding. The statements or writings in question must occur in connection with "an issue under consideration or review" in the proceeding.' [Citations.]" (*Blackburn, supra,* 116 Cal.App.4th at p. 677.)

In *In re Episcopal Church Cases* (2009) 45 Cal.4th 467, a dispute emerged over ownership of a building used by the local church for worship after the local church had disaffiliated from the general church because of doctrinal differences. (*Id.* at pp. 474-476.) Our Supreme Court rejected the argument that the action arose from the local church's protected activity of expressing its disagreement with and disafilliation from the general church. The court concluded that the gravamen of the action was a property dispute. (*Id.* at p. 477.) The court elaborated: "In filing this action, the Los Angeles Diocese sought to resolve a *property dispute.* The property dispute is based on the fact

protected under the anti-SLAPP statute depends on the nature of the conduct rather than the type of cause of action alleged. (*Navellier*, at pp. 92-93.)

that both sides claim ownership of the same property.  This dispute, and not any protected activity, is 'the gravamen or principal thrust' of the action.  [Citation.]  The additional fact that protected activity may lurk in the background—and may explain why the rift between the parties arose in the first place—does not transform a property dispute into a SLAPP suit."  (*Id.* at pp. 477-478; see also *Moriarty v. Laramar Management Corp.* (2014) 224 Cal.App.4th 125, 138-140 [tenant's claims against the landlords arising out of an alleged breach of warranty of habitability were not protected even though they followed the filing of an unlawful detainer]; *United States Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton LLP* (2009) 171 Cal.App.4th 1617, 1628 [reference to protected activity is only incidental to the principal thrust of the complaint in a lawsuit against former attorneys for damages and an injunction to prevent them from representing opposing parties in litigation]; *Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 794, [anti-SLAPP statute did not apply to claims by sellers of real property against the buyer and others because "causes of action [were] factually based on allegations about the manner in which the private transactions between the parties were conducted, and the governmental development permit applications were only incidental or collateral to the principal purposes of those transactions"].)

Similarly here, the pending litigation preceded the alleged injury and was part of the factual background to the present dispute.  However, all of the causes of action were based on Sagonowsky's misrepresentations made during private negotiations to persuade Tour-Sarkissian to represent her.  This case is a fee dispute and all of the misrepresentations related to the negotiating and agreeing to terms of a private contractual relationship.  It is "the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier, supra,* 29 Cal.4th at p. 92.)  Sagonowsky's misrepresentations related to her fee contract negotiations, not protected activity, and this case is a private dispute over payment of attorney fees and litigation costs.

The FACC in the present case is clearly distinguishable from the claims in *Haight Ashbury Free Clinics, supra,* 184 Cal.App.4th 1539, a case cited by Sagonowsky.  In

13

*Haight Ashbury Free Clinics,* the plaintiff nonprofit corporation alleged that its founder breached fiduciary duties by conspiring with attorneys to give false testimony in depositions in ongoing litigation concerning the corporation's interest in a partnership. (*Id.* at pp. 1543, 1548.) The court held that the anti-SLAPP statute applied because the alleged conspiratorial statements "about how to testify in upcoming depositions in a pending lawsuit" were "made in connection with an issue under consideration by a judicial body." (*Haight Ashbury Free Clinics,* at p. 1548.) The court acknowledged that most of the specific acts alleged as the basis for the plaintiff's claim constituted nonprotected activity and were not subject to the anti-SLAPP statute but "the mere fact that there are numerically far fewer allegations of protected wrongdoing than there are allegations of nonprotected wrongdoing does not mean that the allegations of protected activity are merely *incidental* to either the causes of action of the nonprotected activity." (*Haight Ashbury Free Clinics,* at p. 1553.)

Here, unlike the situation in *Haight Ashbury Clinics,* Tour-Sarkissian's claims against Sagonowsky are not based on any act or statement by Sagonowsky "in connection with an issue under consideration by a judicial body." (See *Haight Ashbury Free Clinics, supra,* 184 Cal.App.4th at p. 1548.) The FACC does not allege that Sagonowsky's misrepresentations related to any upcoming depositions, testimony, or any other petitioning behavior. Sagonowsky was not sued for "any written or oral statement or writing" made before a judicial proceeding or made in connection with an issue under consideration or review by a judicial body. (§ 425.16, subd. (e).) Instead, Sagonowsky's liability arose from her failure to pay her attorney bills and costs after she promised to pay them with allegedly no intent to pay them. The injury, according to the FACC, was that Tour-Sarkissian was deprived of its fees and costs expended on Sagonowsky's behalf and was deprived "of the ability to seek employment by paying clients[.]" Thus, the FACC does not attempt to impose liability on Sagonowsky for protected and nonprotected conduct. The FACC alleges liability solely on nonprotected conduct.

14

In addition to *Haight Ashbury Free Clinics,* Sagonowsky asserts that *Taheri, supra,* 160 Cal.App.4th 482 and *Tuszynska, supra,* 199 Cal.App.4th 257 support her position. Both of these cases, however, are distinguishable from the present case.

In *Taheri, supra,* 160 Cal.App.4th 482, a law firm alleged that an attorney, Neil C. Evans, induced the client to terminate his relationship with the firm by promising the client that he would be able to enforce a settlement agreement on behalf of the client. (*Id.* at pp. 485-486.) The firm had advised the client that the settlement agreement was unenforceable because it had been repudiated. (*Id.* at p. 486.) The appellate court held that the commercial speech exception did not apply and rejected the law firm's argument that the lawsuit did not arise from protected activity but from Evans's improper solicitation of a client. (*Id.* at pp. 489-490.) The appellate court held that the anti-SLAPP statute applied because the complaint "plainly shows it arose from Evans's communications with [the client] about pending litigation, and from Evans's conduct in enforcing the settlement agreement on [the client's] behalf." (*Taheri,* at p. 489.) The plaintiff's claims were based on allegations that Evans improperly solicited the law firm's client and the court concluded that "this is a case in which legal advice to a specific client on a pending matter has occurred contemporaneously with the alleged solicitation of the client." (*Id.* at p. 492.)

In *Taheri,* the conduct underlying the pleading was the advice to a prospective client about settling a lawsuit. (*Taheri, supra,* 160 Cal.App.4th at pp. 486, 489-490.) In contrast, here, Tour-Sarkissian's claims are not based on any statements or recommendations about actions to be taken in pending litigation. As already explained, Sagonowsky's solicitation, according to the pleading, was to induce Tour-Sarkissian to sign the retainer agreement and the injury was not based on any protected activity; the communications concerning the pending lawsuit were incidental.[11]

---

[11] We need not consider Tour-Sarkissian's argument that the holding in *Taheri* is limited to situations where a third party sues on the basis of an attorney-client communication.

15

In *Tuszynska, supra,* 199 Cal.App.4th 257, a female attorney who provided legal services to members of a sheriffs' association under a prepaid legal services plan brought an action for gender discrimination against the sheriffs' association, its prepaid legal services plan, and a former plan administrator contending that she received fewer case assignments than male attorneys with less experience. (*Id.* at p. 261.) The Fourth District reversed the trial court's denial of the defendants' special motion to strike and concluded that the trial court had improperly "conflate[d] defendants' alleged injury-producing conduct—their failure to assign new cases to plaintiff . . . —with the unlawful, gender-based discriminatory *motive* plaintiff was ascribing to defendants' conduct—that plaintiff was not receiving new assignments or continued funding *because* she was a woman." (*Id.* at p. 268.) The court stated that "defendants' attorney selection and litigation funding decisions, and *any* communications made in connection with those decisions, constitute protected speech and petitioning activities." (*Ibid.*) The court concluded that plaintiff's gender discrimination claims were "based squarely on defendant's attorney selection and litigation funding decisions themselves, and, concomitantly, communications defendants made in connection with making those decisions." (*Id.* at p. 269.) The court added, "Plaintiff's gender discrimination claims would have no basis in the absence of defendants' attorney selection and litigation funding decisions *themselves.* Thus here, defendants' selection and funding decisions constitute the gravamen, principal thrust, and core injury-producing conduct underlying plaintiff's gender discrimination claims." (*Id.* at p. 270.)

Sagonowsky asserts that similarly, here, Tour-Sarkissian is attempting to create a false dichotomy between Sagonowsky's protected activity in making statements about her pending litigation and her promises to pay the attorney fees and costs.

The present case is clearly distinguishable from *Tuszynska.* The plaintiff's gender discrimination claims in *Tuszynska* were based on the defendant's conduct related to how the defendants selected attorneys to represent the sheriff's association and how the defendants decided whether to fund litigation on behalf of the sheriff's association. (*Tuszynska, supra,* 199 Cal.App.4th at p. 268.) In contrast, here, the principal thrust of

16

the misconduct alleged in the FACC is the conduct inducing Tour-Sarkissian to represent Sagonowsky in her civil and divorce actions.

When granting the special motion to strike, the trial court in the present case interpreted *Tuszynska* as holding that whenever claims are based on communications related to the hiring of attorneys, those claims fall under section 425.16. This is incorrect. An action based on communications during an interview to hire an attorney is not always protected under the anti-SLAPP statute. " ' "[T]he nature or form of the action is not what is critical but rather that it is against a person who has exercised certain rights." ' " (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 739.) Here, the causes of action were based on misrepresentations related to inducing the law firm to represent Sagonowsky in her civil and family actions. As already stressed, the fraud was not based on any "act in furtherance of" Sagonowsky's " 'right of petition or free speech under the United States or California Constitution in connection with a public issue[.]' " (§ 425.16, subd. (e).)

Sagonowsky maintains that section 425.16 should apply because the FACC operated to chill Sagonowsky's lawsuit against Tour-Sarkissian for malpractice. Even if we were to presume that the FACC did discourage or chill Sagonowsky from pursuing her malpractice claim against Tour-Sarkissian, this is immaterial to the question whether the anti-SLAPP statute applies. The purpose of the anti-SLAPP statute is "to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights" of petition or free speech (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056), in order to encourage participation in matters of public significance and prevent meritless litigation designed to chill the exercise of First Amendment rights. (§ 425.16, subd. (a).) The purpose of section 425.16 is not related to malpractice actions.

Accordingly, we reverse the trial court's granting of Sagonowsky's special motion to dismiss. Since we conclude that the causes of action did not arise from protected activity under the anti-SLAPP statute, we need not decide whether Tour-Sarkissian established a probability of prevailing on the merits.

17

### III. *White's Appeal*

The trial court denied White's special motion to strike the 12th through 15th causes of action of the FACC.[12] The trial court found that these causes of action were based on White's statements made in order to retain Tour-Sarkissian as counsel and "did not 'occur in connection with "an issue under consideration or review" in the [underlying actions],' " and cited *Blackburn, supra,* 116 Cal.App.4th at page 677. White argues that his communications to Tour-Sarkissian arose from protected speech and petitioning activity.

The causes of action against White were based on alleged misrepresentations he made to induce Tour-Sarkissian to provide legal representation for Sagonowsky. He allegedly made statements that Sagonowsky would reimburse the law firm for the costs that were advanced by Tour-Sarkissian and that she would pay the attorney fees. The causes of action also alleged that he made false statements about the civil and divorce actions in order to get Tour-Sarkissian to agree to represent Sagonowsky in these actions. For the same reasons that we have concluded that the anti-SLAPP statute does not cover the claims against Sagonowsky, we hold that Tour-Sarkissian's causes of action against White did not arise from protected speech. These claims are based on alleged misrepresentations designed to get Tour-Sarkissian to agree to represent Sagonowsky in the civil and divorce actions and thus the gravamen of the FACC was not based on White's protected conduct. As already discussed earlier with regard to Sagonowsky's anti-SLAPP argument, to the extent these causes of action included communications related to pending litigation, these communications were incidental.

White notes that he is an attorney and declares that Tour-Sarkissian knew he was an attorney when the parties met. He claims that the purpose of the meetings was to advance Sagonowsky's interests in the divorce and civil action. He disputes Tour-Sarkissian's characterization of the parties' meetings as solicitation or contract negotiations and claims that they discussed substantive legal issues. He insists that any

---

[12] Theses causes of action were intentional and negligent misrepresentation, concealment, and promissory fraud.

18

negotiations were incidental to the substantive legal issues that were discussed. White contends that the lower court improperly cited to *Blackburn, supra,* 116 Cal.App.4th 670 when it ruled that White's statements to Tour-Sarkissian were made in order to retain Tour-Sarkissian as counsel and were not in connection with any pending litigation.

The parties might have discussed substantive legal issues at their meetings but, as already discussed, the injury was based on soliciting Tour-Sarkissian to sign the retainer agreements and was not based on protected activity. Private business relationships, such as an agreement regarding fees, are not subject to the anti-SLAPP statute. (*Blackburn, supra,* 116 Cal.App.4th at pp. 676-677.)

In *Blackburn, supra,* 116 Cal.App.4th 670, the Court of Appeal held that the gravamen of the plaintiff's fraud cause of action was the defendant's bidding up the price of real property without the intent to perform, resulting in plaintiff's paying a higher price for the property at a sheriff's auction. (*Id.* at p. 676.) The court explained that the "ministerial event of a sheriff's sale or auction simply does not concern an issue under review or determine some disputed matter as contemplated under the anti-SLAPP law" and was merely a "business dealing or transaction[.]" (*Id.* at pp. 676-677.)

Similarly, here, Tour-Sarkissian's causes of action against White did not concern an issue under official review that required a determination to be based upon the exercise of White's free speech or petition rights. Rather, White and Tour-Sarkissian engaged in business dealings or transactions of a contractual nature, leading Tour-Sarkissian to agree to represent Sagonowsky.

In arguing that *Blackburn* is distinguishable from the present case, White points out that the sheriff's auction in *Blackburn* came after litigation had concluded while Sagonowsky's divorce and civil actions were pending when he made the statements to Tour-Sarkissian. Secondly, he maintains that the statements made by the defendant in *Blackburn* were in the context of a "ministerial event" while, according to White, White was advising Sagonowsky regarding her selection of a law firm and the handling of the litigation. Thirdly, he notes that neither the plaintiff nor the defendant was an attorney in *Blackburn,* while he is an attorney.

19

White's attempts to distinguish *Blackburn* from the present case are unavailing. It is immaterial that the litigation in the present case was pending while the litigation in the prior case had concluded. Section 425.16, subdivision (e) does not require the communications be connected to "pending" litigation but simply requires the communications be "made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law[.]" (§ 425.16, subd. (e)(2).)

In his attempt to distinguish the present case from *Blackburn* and repeatedly in his arguments that the anti-SLAPP statute applies, White stresses that he is an attorney, that Tour-Sarkissian knew at the first meeting that he was an attorney, that he advised Sagonowsky about her divorce and civil actions, that he advised Sagonowsky regarding her selection of counsel and the transition of the litigation to Tour-Sarkissian, that he provided information about the family and divorce actions, and that he gave Tour-Sarkissian pleadings and evidence in the divorce and civil actions. He claims that his communications concerned substantive legal issues and thus they were connected with litigation and covered by section 425.16, subdivision (e)(2).

The foregoing argument has little merit. The fact that White is an attorney is not dispositive and does not make any claims against him protected under the anti-SLAPP statute. "Not all attorney conduct in connection with litigation, or in the course of representing clients, is protected by section 425.16. (*Freeman v. Schack* (2007) 154 Cal.App.4th 719 [contract and tort action against attorney for representing adverse interests in litigation not subject to the anti-SLAPP statute]; *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179 [action against attorney for breach of duty of loyalty arising from representation of clients with conflicting interests not subject to the anti-SLAPP statute]; *Moore v. Shaw* (2004) 116 Cal.App.4th 182 [action against estate planning attorney for participation in breach of trust not subject to anti-SLAPP motion]." (*California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032, 1037 [failure of attorney to pay medical lien out of settlement proceeds did not constitute protected petitioning activity because the complaint was

"based on the underlying controversy between private parties about the validity and satisfaction of the liens"].) Even if White were advising Sagonowsky regarding her selection of counsel or the transition of the litigation to Tour-Sarkissian, the FACC does not allege any injury related to these communications and the alleged fraud is not based on any of this advice. As already stressed, the injury is related to the signing of the retainer agreements and Sagonowsky's failure to reimburse Tour-Sarkissian for costs advanced and to pay the attorney fees.

White also relies on *Tuszynska, supra,* 199 Cal.App.4th 257 and *Taheri, supra,* 160 Cal.App.4th 482 to argue that the anti-SLAPP statute applies. As already discussed with regard to Sagonowsky's special motion to strike, these cases are distinguishable and not helpful to White. All of the references to protected activity in the causes of action against White were collateral.

Since we conclude that the trial court correctly found that White failed to satisfy the threshold showing that the anti-SLAPP statute applies to the claims against him, we need not address the trial court's finding that Tour-Sarkissian demonstrated a probability of prevailing.

## DISPOSITION

The order granting Sagonowsky's special motion to strike Tour-Sarkissian's 2nd, 5th, 8th, 10th, and 12th through 15th causes of action under section 425.16 is reversed. Sagonowsky is to pay the costs of appeal.

The order denying White's special motion to strike Tour-Sarkissian's 12th through 15th causes of action under section 425.16 is affirmed. White is to pay the costs of appeal.

21

_____
Kline, P.J.

We concur:


_____
Richman, J.


_____
Brick, J.*


\* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.