Filed 12/19/14  Coyote Springs Guest Ranch v. Castaldi CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| COYOTE SPRINGS GUEST RANCH et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> ALFONSE CASTALDI et al., <br><br> Defendants and Appellants. | F065144 & F065570 <br><br> (Mariposa Super. Ct. No. 10063) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Mariposa County.  Wayne R. Parrish and F. Dana Walton, Judges.\*

Allan L. Dollision; Canelo, Wilson, Wallace & Padron; and Kenneth R. Mackie for Defendant and Appellant, Alfonse Castaldi

Canelo, Wilson, Wallace & Padron; Canelo, Wallace, Padron & Mackie; and Kenneth R. Mackie for Defendant and Appellant, Theresa Castaldi.

Silveira, Mattos & Lewis and Weldon J. Mattos for Plaintiffs and Respondents.

-ooOoo-

---

\* Judge Parrish presided over the special motion to strike (Code Civ. Proc., § 425.16); Judge Walton presided over the motion for attorney fees/sanctions (Code Civ. Proc., § 425.16, subd. (c)(1).)

This case requires us to wade through convoluted facts involving 12 causes of action, five parties, two lawsuits and a guest ranch. At the center of the litigation are respondents' claims that appellants breached a verbal contract with unusual terms.

**INTRODUCTION**

In September 2011, appellant Alfonse Castaldi sued respondent Ken Baker to evict him from 2100 Old Highway, where Coyote Springs Guest Ranch operated. (Mariposa County Superior Court case No. 2630.) After that suit was settled, Baker filed a first amended complaint against Alfonse[1] in the present case, alleging a dozen causes of action ranging from breach of contract to financial elder abuse.[2] (Mariposa County Superior Court case No. 10063.) Baker's suit alleged Alfonse fraudulently entered into a contract to finance a repurchase of the guest ranch property[3] while not intending to perform according to its terms. Alfonse then allegedly breached that contract by (1) failing to perform according to its terms, (2) improperly recording a grant deed to the guest ranch property, and (3) filing the eviction lawsuit against Baker. In the suit, Baker also claimed that Alfonse and his daughter, Theresa Castaldi, trespassed on the guest ranch property, and that Theresa stole items from the guest ranch.

For reasons we explain below, the core issue in this appeal is whether Baker's causes of action against the Castaldis "arose" from Alfonse's unlawful detainer action

---

[1] We refer to the Castaldis by their first names to avoid confusion. No disrespect is intended.

[2] We do not know the precise date on which Baker's original complaint in case No. 10063 was filed because the complaint is not in the appellate record. Because the settlement in case No. 2630 explicitly references case No. 10063, the original complaint in case No. 10063 must have been filed sometime before November 28, 2011, when the settlement in case No. 2630 was executed.

[3] We use the phrase "guest ranch property" in the sense that the guest ranch allegedly operated at the property. We express no view regarding title to or rightful possession of 2100 Old Highway.

2.

against Baker for purposes of the anti-SLAPP statute. (See Code Civ. Proc., § 425.16.)[4] The trial court concluded that none of Baker's causes of action against the Castaldis arose from the eviction suit.

In contrast, we conclude that some, but not all, of Baker's causes of action "arose" from Alfonse's unlawful detainer action. For example, Baker's breach of contract claim alleges three discrete breaches, one of which is Alfonse's filing of the unlawful detainer action. Because "at least one" act underlying this cause of action is protected conduct (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1287), and that act *is* alleged to be a basis for liability (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1183), the cause of action "arises" from protected activity.

Conversely, other causes of action are not meaningfully related to the unlawful detainer action. For example, the cause of action for conversion, which alleges that Theresa stole items from the guest ranch, is clearly not based on the unlawful detainer action. The "fact that protected activity may lurk in the background … does not transform a property dispute into a SLAPP suit." (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 478.)

Hereafter, we will analyze each cause of action and ultimately conclude that the first, second, third, fourth, seventh, eighth, and twelfth causes of action do not arise from protected activity and affirm the trial court's order as to those claims. We also conclude that the fifth, sixth, ninth, tenth and eleventh causes of action do arise, in part, from Alfonse's unlawful detainer action against Baker. Therefore, we will vacate the trial court's order as to those causes of action. We will also vacate the order for attorney fees.

---

[4] All future statutory references are to the Code of Civil Procedure, unless otherwise noted.

3.

# FACTS

### A. *Unlawful Detainer Action*

Alfonse filed an unlawful detainer action on September 14, 2011, against Baker, seeking to evict him from 2100 Old Highway. (Case No. 2630.)

### 1. Alfonse's Allegations

Alfonse claimed that on January 1, 2011, he and Baker orally agreed that Alfonse would purchase 2100 Old Highway in Baker's name. Baker would hold legal title for Alfonse's "benefit and account." The agreement also required Baker to pay Alfonse $1,500 per month commencing January 6, 2011. "[P]ursuant to their agreement," legal title to 2100 Old Highway then "passed" to Alfonse on April 7, 2011, through the recording of a grant deed.

### 2. Settlement

Eventually, the unlawful detainer action was settled. Under the terms of the settlement, Alfonse would acquire a writ of possession to 2100 Old Highway. The writ would be stayed until 5:00 p.m. on December 2, 2011. If Baker had not quit the premises by that time, the sheriff would escort him off the property.

In the settlement colloquy before the court, Alfonse indicated he understood that the settlement "does not [a]ffect" case No. 10063. Alfonse also indicated that he understood the settlement was "without prejudice to either side reserving their rights to assert or contest right to possession, the deed that got recorded. The right to title, tenancy – all those issues are not being decided at this time."

The court issued an order pursuant to the settlement, which it referred to as a "stipulation." Paragraph 6 of that order provided:

> "6.     The parties stipulate and agree this stipulation and any order thereon does not represent an agreement to or an adjudication of any issues in Case No. 2630, including, but not limited to right of possession, the validity of the Deed to plaintiff from defendant Baker, whether there is or is not a tenancy relationship, and shall not be an admission in, or res judicata,

4.

*a collateral estoppel or waiver of any issues in Mariposa Superior Court Case No. 10063 and/or 2630.*"  (Italics added.)

Counsel for Baker and Alfonse signed the order indicating their approval "as to form and content."  Neither Baker nor Alfonse's signature appears on the order.

*B.  Respondents' Allegations in the First Amended Complaint*

Sometime before the end of November 2011, and before the unlawful detainer case was settled, respondents filed the original complaint in the present suit.  Then, after the unlawful detainer action was settled, respondents filed a first amended complaint (the "complaint"), which alleged the following version of events:

Coyote Springs Guest Ranch ("Coyote Springs") originated as a general partnership between respondent Patricia Oakander ("Oakander"), her husband, and respondent Ken Baker ("Baker").  It was intended to operate as a "guest ranch facility and tourist attraction in Mariposa County …."  Originally, Oakander and her husband had a collective 50 percent interest in the partnership.[5]  Baker owned the remaining 50 percent interest.

In 2002,[6] Oakander purchased property located at 2100 Old Highway.  By 2005, Coyote Springs was operating at this location, "hosting and entertaining … tourist customers …."  After the purchase of the property, Baker worked to develop physical infrastructure for the property including the construction of barns, fencing, water systems, and a shed.  Baker also attended "scores" of public meetings and applied for various permits necessary to operate Coyote Springs.  Baker contributed more than $2 million of his own money towards the development of the Coyote Springs property.  Baker's then girlfriend, appellant Theresa Castaldi, "did little toward the development" of Coyote Springs and "contributed little, if any[,] capital."

---

[5] The complaint alleges that Mr. Oakander "has since given up his interest in the partnership and Patricia Oakander owns 50% as her sole and separate property."

[6] It appears that the guest ranch had operated elsewhere since 1997.

5.

Theresa's father, appellant Alfonse Castaldi, began investing in the Coyote Springs "venture" in or around 2004. In 2005, the 2100 Old Highway property was "put in [Theresa's] name." The complaint alleges that "[i]t has always been understood anyone holding title to the real property was a participant in the advancement of [Coyote Springs]."

In 2006, Baker allowed his 50 percent interest in Coyote Springs to be put in Theresa's name. Baker and Theresa agreed that Theresa's 50 percent interest in Coyote Springs was "owned jointly between her and Baker."

Eventually, the partnership became unable to afford mortgage payments for the 2100 Old Highway property. In 2010, the lender foreclosed on the property. From 2005 to 2010, the property had been used by Coyote Springs "with no expectation of or payment of rent to [Theresa] Castaldi." The complaint alleges that Theresa was "well aware of this arrangement …."

In 2010, Baker began negotiating with J.P. Morgan Chase Bank, N.A. to reacquire the 2100 Old Highway property. He purportedly did so on behalf of himself, Theresa, Oakander and Coyote Springs. An investor had agreed to acquire the property for the partnership, but withdrew days before the escrow was to close. Alfonse agreed to "loan" the money to reacquire the property "for the benefit of" Coyote Springs "and its owners, [Theresa], Oakander and Baker." The complaint is not entirely clear, but it appears the amount Alfonse agreed to loan was $265,000. Title to the property was taken in Baker's name "with the understanding the property was for the use and benefit of Coyote Springs Guest Ranch." In January 2011, Baker and Theresa moved to the 2100 Old Highway property.

The complaint alleged that the "money for the reacquisition came from [Alfonse] with" an "understanding." First, Baker would sign a deed in favor of Alfonse to be delivered and recorded in the event Baker died. Additionally, Alfonse was to apply for a loan for 80 percent of the purchase price, and the loan proceeds would be made available

6.

to use as part of the down payment for an adjoining parcel integral to the operation of Coyote Springs (i.e., 2060 Old Highway).  The partnership was to pay the monthly amount due on the loan "to the extent any of the loan proceeds were utilized by the partnership."  The partnership would pay Alfonse a "return of 5% on the $265,000 plus additional sums advanced by him to reacquire 2100 Old Highway, to be paid annually on December 31 of each year, and that the partnership would pay all taxes, insurance and maintenance" for the 2100 Old Highway property.  We will refer to these terms as the "oral agreement."[7]

Alfonse applied for the loan as contemplated by the oral agreement and was approved.  But, the complaint alleges that Alfonse "did not proceed with the terms of the agreement when he failed to take any further steps in order to actually obtain the loan." In an alleged violation of the agreement, Alfonse acquired the grant deed transferring 2100 Old Highway from Baker to himself and had it recorded in Mariposa County in April 2011.

The relationship between Baker and Theresa ended around July 2011.  At that time, Alfonse asserted ownership of the 2100 Old Highway property and demanded that Baker pay rent or quit the premises.  Alfonse filed an unlawful detainer action against Baker on September 14, 2011, which was designated Mariposa County Superior Court case No. 2630 (the "unlawful detainer action").

At the time of the breakup, Theresa "abandoned her participation" in the Coyote Springs business.  She also moved away from the 2100 Old Highway property.  Prior to her departure, Theresa had performed various tasks for Coyote Springs including bookkeeping and paying bills.  When she left, Baker assumed Theresa's responsibilities.

---

[7] We refer to it in this fashion for simplicity.  Our use of this term is not meant to reflect a determination of the merits of respondents' claims with respect to the existence, validity, enforceability or substance of the agreement.

Every week, beginning in September 2011, Theresa began entering the property used by Coyote Springs "without authority or permission from Baker or Oakander." Theresa was allegedly intimidating Coyote Springs employees, taking "business property" including a computer, taking keys out of vehicles used in business operations and causing "distraction/commotion" in front of customers.

Around September 10, 2011, Theresa attempted to sell one of Coyote Springs's horses. Deputy sheriffs were called to the scene and had Theresa leave the property.

### C. Causes of Action

The complaint alleges 12 causes of action for (1) constructive trust; (2) fraud; (3) partnership dissolution as between Oakander and Theresa; (4) partnership dissolution as between Baker and Theresa; (5) financial elder abuse; (6) intentional interference with economic relations; (7) trespass; (8) conversion; (9) intentional infliction of emotional distress; (10) negligent infliction of emotional distress; (11) breach of contract; and (12) "cancellation of deed," respectively.

### D. Special Motion to Strike

The Castaldis filed an anti-SLAPP motion (§ 425.16) in case No. 10063 on the grounds that each cause of action was based on the unlawful detainer action Alfonse had filed against Baker (case No. 2630). Alfonse asserted that his litigation-related activities in the unlawful detainer action constituted acts performed in furtherance of his rights of free speech and/or petition, and respondents' causes of action arose from those protected acts.

Respondents argued that the causes of action did not arise from protected acts. Respondents also argued that Alfonse waived his right to, or was judicially estopped from, filing the special motion to strike. Specifically, they contended that in the unlawful detainer stipulation, Alfonse had agreed that Baker could litigate the issue of who had the right to possession and ownership of 2100 Old Highway. Respondents contended that

Alfonse's filing of a motion to strike was inconsistent with his prior position embodied in the unlawful detainer stipulation.

The trial court denied the motion. The court agreed with Alfonse that judicial estoppel and waiver did not apply, and that the unlawful detainer action was protected activity. But the trial court concluded that appellants had failed to show that respondents' causes of action arose from that activity.

### E. Attorney Fees/Sanctions

Respondents moved for attorney fees. (§ 425.16, subd. (c)(1).) The trial court granted the motion and imposed attorney fees on appellants and their counsel, jointly and severally, in the amount of $70,575. The award was made "pursuant to" sections 425.16, subd. (c)(1) and 128.5. The court set out the basis for its award as follows:

> "This attorney fees and costs sanction is awarded for the following conduct: presenting, filing and advocating a Special Motion to Strike Plaintiffs' First Amended Complaint, and each cause of action therein, that was legally and factually frivolous, and completely devoid of merit. Such motion was also brought for the purpose of unnecessary delay, harassment and to needlessly increase litigation expense…."

In these consolidated appeals, appellants challenge the denial of their anti-SLAPP motion and the imposition of attorneys fees.

## DISCUSSION

### A. Standard of Review

We review the trial court's denial of appellants' special motion to strike de novo. (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)

### B. Waiver/Estoppel

Initially, respondents contend Alfonse could not bring a special motion to strike due to principles of waiver and estoppel.[8] Specifically, they claim that in the unlawful

---

[8] In the lower court, respondents argued that Theresa lacked "standing" to file a special motion to strike. They do not make that contention on appeal.

9.

detainer stipulation, Alfonse "specifically agreed" respondents' claims "could and would be litigated."[9] The trial court rejected this argument and found that Alfonse did not waive his right to bring an anti-SLAPP motion. We agree with the trial court's conclusion on this point.

The unlawful detainer action was resolved by settlement and the trial court issued an order thereon. That order included the following language:

> "6.      The parties stipulate and agree this stipulation and any order thereon does not represent an agreement to or an adjudication of any issues in Case No. 2630, including, but not limited to right of possession, the validity of the Deed to plaintiff from defendant Baker, whether there is or is not a tenancy relationship, and *shall not be* an admission in, or res judicata, *a* collateral estoppel or *waiver of any issues in Mariposa Superior Court Case No. 10063* and/or 2630." (Italics added.)

The order is clear that the stipulation in the unlawful detainer action did not effect a "waiver of any issues in" in the present action. Yet respondents contend that the stipulation *did* effect a waiver of an issue in the present action. Specifically, respondents contend that Alfonse waived his right to assert the present action is a SLAPP suit. This interpretation directly contravenes the plain language of the agreement.[10]

---

[9] The phrase "could and would be litigated" does not appear in the settlement colloquy. But even if we accepted respondents' characterization, we would not find waiver or estoppel here. Agreeing that a claim can be litigated is far different than agreeing not to participate in or resist that litigation. Indeed, the filing of an anti-SLAPP motion is how Alfonse has chosen to "litigate" respondents' claims. The terms of the stipulation, outlined above, show that Alfonse only agreed that Baker was not forfeiting his right to sue for possession and title of 2100 Old Highway.. That is not the same as agreeing that Baker could sue him, without resistance, for having filed the unlawful detainer action in the first place.

[10] At oral argument, respondents' counsel asserted that this interpretation of the settlement would render it "meaningless." Not so. Without the stipulation, Alfonse may have argued that the unlawful detainer settlement had res judicata effect as to some or all of the issues in the present case. (Cf. *Seidell v. Anglo-California Trust Co.* (1942) 55 Cal.App.2d 913, 918.) " '[F]ull and fair' litigation of an affirmative defense – even one not ordinarily cognizable in unlawful detainer, if it is raised without objection, and if a fair opportunity to litigate is provided – will result in a judgment conclusive upon issues

10.

The trial court properly concluded Alfonse did not waive his right to bring a special motion to strike, nor is he estopped from doing so.

We will now proceed to the substance of the anti-SLAPP motion.

*C. Anti-SLAPP Analytical Framework*

Ruling on anti-SLAPP motions requires a two-step analysis. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).)

"First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. [Citation.]" (*Equilon*, *supra*, 29 Cal.4th at p. 67.)

Second, if the first prong is satisfied, the court then determines whether the plaintiff has produced admissible evidence demonstrating "a probability of prevailing on the claim…." (*Equilon*, *supra*, 29 Cal.4th at p. 67; see *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1497 [evidence must be admissible].)

---

material to that defense…." (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 256–257; see also *Consumer Advocacy Group, Inc. v. ExxonMobil Corp.* (2008) 168 Cal.App.4th 675, 694 ["A court-approved settlement acts as a final judgment on the merits for the purposes of res judicata"].) Thus, "when litigants to an unlawful detainer proceeding fully try other issues besides the right of possession, the unlawful detainer judgment is conclusive as to those other litigated issues. [Citations.]" (*Gombiner v. Swartz* (2008) 167 Cal.App.4th 1365, 1371.) Without the stipulation, Alfonse may have argued that various issues in the present case – e.g., the validity of the deed and Alfonse's claimed right to possession of 2100 Old Highway – were conclusively resolved in his favor in the unlawful detainer action. The stipulation protects respondents from such a claim and is not "meaningless" when interpreted according to its plain language.

11.

Thus, the defendant bears the burden on the first prong, and the plaintiff bears the burden on the second. (See *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 928.)

While analyzing each prong, courts consider the pleadings and affidavits stating the facts upon which the defense or liability is based. (§ 425.16, subd. (b)(2).)

### 1. First Prong

The first portion of section 425.16, subdivision (b)(1) sets forth the first prong of the two-step analysis we outlined above:

> "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike …." (§ 425.16, subd. (b)(1).)

This provision anticipates at least two inquiries. We must first determine whether the defendant performed any act in furtherance of his or her constitutional right to petition or free speech. (§ 425.16, subd. (b)(1).) Here, defendant's acts in initiating and prosecuting the unlawful detainer suit are clearly protected under section 425.16. (See *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1480.)[11] Thus, our

---

[11] While we acknowledge that this point of law is compelled by the language of the statute, we question its wisdom. The anti-SLAPP statute applies to causes of action arising from a person's "right of petition or free speech" under the United States or California Constitutions. (§ 425.16, subd. (b)(1).) The statute identifies various categories of protected acts. (§ 425.16, subd. (e).) These categories turn out to be quite broad. For example, the filing of virtually any lawsuit could arguably be considered protected activity. (§ 425.16, subd. (e)(1), (2) & (4); see also *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734–735 (*Jarrow*); *Navellier v. Sletten* (2002) 29 Cal.4th 82, 96 (dis. opn. of Brown, J.) [under *Navellier* decision, "any" suit is a SLAPP depending on when it is filed].) This has led to "many cases of what might be called recursive litigation, where – as here – the anti-SLAPP law is invoked after one party sues another over the latter's conduct in litigation…." (*Old Republic Construction Program Group v. The Boccardo Law Firm, Inc.* (2014) 230 Cal.App.4th 859, 877.)

While we question the propriety of subjecting such a broad category of litigation to a specialized motion process, the statutory language is actually quite clear on the issue.

12.

primary focus in this appeal is on the second inquiry, which would have us determine whether plaintiffs' cause of action "arose" from the protected act(s) of the defendants. (See *Copenbarger v. Morris Cerullo World Evangelism* (2013) 215 Cal.App.4th 1237, 1239.)

Mixed causes of action are those containing allegations of both protected and unprotected conduct. "A mixed cause of action is subject to section 425.16 if at least one of the underlying acts is protected conduct, unless the allegations of protected conduct are merely incidental to the unprotected activity." (*Salma v. Capon*, *supra*, 161 Cal.App.4th at p 1287.) "[A]n alleged act is incidental to a claim … *only* if the act is not alleged to be the basis for liability." (*Wallace v. McCubbin*, *supra*, 196 Cal.App.4th at p. 1183, italics added.)

It is important to note that there are several considerations which, alone, do *not* establish that a cause of action "arose" from protected conduct. First, chronology alone is insufficient. "[T]he mere fact an action was filed after protected activity took place does not mean it arose from that activity." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76–77.) Second, the fact that protected activity may have been the impetus for filing the complaint is not enough. "That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such." (*Id*. at p. 78.) Third, when the allegedly protected activity is the filing of a lawsuit, even the fact that the two suits encompass overlapping subject matter is not dispositive. That is, even though two opposing lawsuits may involve the same series of occurrences or transactions, it does not

(See § 425.16, subd. (e) [protecting "any written or oral statement or writing made before a … judicial proceeding …"]; see also § 425.16, subd. (a) [section shall be construed broadly]; *Jarrow*, *supra*, 31 Cal.4th at pp. 734–735.) And it is not our role "to omit was has been inserted" into a statute. (§ 1858.) Instead, we will simply observe that the breadth of the current statute means the anti-SLAPP procedure is yet another arena for overly litigious individuals to employ scorched-earth tactics. "The cure has become the disease – SLAPP motions are now just the latest form of abusive litigation." (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 96 (dis. opn. of Brown, J.).)

13.

necessarily follow that the latter suit "arises from" the former under section 425.16, subdivision (b)(1). (See *City of Cotati v. Cashman*, *supra*, 29 Cal.4th at pp. 76–78.) "[A] responsive but independent lawsuit [may] arise from the same transaction or occurrence alleged in the preceding lawsuit, without necessarily arising from that earlier lawsuit itself. [Citation.]" (*Id*. at p. 78.) Fourth, simply mentioning protected speech or petitioning activity by the defendant in the complaint is not enough (unless the cause of action is *based on* that protected activity). "[A] defendant in an ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant. [Citation.]' " (*Personal Court Reporters, Inc. v. Rand* (2012) 205 Cal.App.4th 182, 190.)

Instead, the critical inquiry is whether the plaintiff's cause of action is "*based on*" defendant's protected activity. (*City of Cotati v. Cashman*, *supra*, 29 Cal.4th at p. 78, original italics.)

### 2. Second Prong

Under the second prong of the anti-SLAPP analysis, courts determine whether "the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

### *D. Analysis*

Before we analyze the individual causes of action, we will correct an apparent misunderstanding by the trial court regarding the analysis of "mixed" causes of action. As noted *ante*, a mixed cause of action satisfies the first prong of section 425.16 analysis "if *at least one* of the underlying acts is protected conduct, unless the allegations of protected conduct are merely incidental to the unprotected activity. [Citation.]" (*Salma v. Capon*, *supra*, 161 Cal.App.4th at p. 1287, italics added.)

In its rulings on the fifth through eleventh causes of action, the trial court repeatedly concluded that "Plaintiffs could still have a viable cause of action even if the

14.

[protected activity] did not occur." "Accordingly," the court denied the anti-SLAPP motion as to those causes of action. This is not the correct standard.

To determine whether allegations of protected conduct are merely incidental, the court looks to whether the allegations of *protected* conduct are an independently "adequate basis for liability under the cause of action …." (See *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1551.) If so, the allegations of protected conduct are not merely incidental. (See *ibid.*) Here, the trial court essentially inverted this analysis by looking to whether the allegations of *unprotected* acts were sufficient to establish liability without the allegations of protected acts. This erroneous standard would allow plaintiffs to "frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.' " (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308, fn. omitted.)

Having clarified this point of law, we will now proceed to an individualized analysis of each cause of action. (See *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 769 [trial court correctly considered individual causes of action rather than overall "thrust" of pleading].)

### 1. First Cause of Action: "Imposition of Constructive Trust"

In the first cause of action, respondents seek imposition of a constructive trust on the 2100 Old Highway property. They allege that Alfonse fraudulently promised to perform according to the oral agreement. Respondents allege that had Alfonse not defrauded them, they would have found another investor. As a result, respondents seek imposition of a constructive trust.

"The essence of the theory of constructive trust is to prevent unjust enrichment and to prevent a person from taking advantage of his or her own wrongdoing. [Citations.]" (*Communist Party v. 522 Valencia, Inc.* (1995) 35 Cal.App.4th 980, 990.) The wrongdoing underlying respondents' constructive trust claim is the allegation that

15.

Alfonse expressed agreement to the terms of an oral agreement he intended to violate. Thus, the gravamen of this purported[12] cause of action was not the filing of the unlawful detainer action, but rather Alfonse's allegedly wrongful acquisition of title to the property. Therefore, this cause of action does not arise from the filing of the unlawful detainer action, and appellants' motion was properly denied as to this claim.

### 2. Second Cause of Action:  Fraud

In the second cause of action, respondents again allege that Alfonse did not perform in accordance with the oral agreement and "never intended to abide by the agreement." The complaint also alleges that Alfonse intentionally misrepresented a desire to help respondents develop, maintain, and operate Coyote Springs. Thus, the "wrongful and injury-producing" acts at the "foundation" of the claim (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 490) are Alfonse's alleged misrepresentations, not the unlawful detainer action. The anti-SLAPP motion was properly denied as to the fraud cause of action.

### 3. Third and Fourth Causes of Action:  Partnership Dissolution

In the third and fourth causes of action, respondents seek dissolution of the partnership between (1) Oakander and Theresa (third cause of action); and (2) Baker and Theresa (fourth cause of action). The essence of both claims is that Theresa "disavowed any interest in the partnership" and "no longer desires to work in the best interests of the partnership." Because these claims are not based on the unlawful detainer action, they do not arise from the protected activity urged by appellants.

---

[12] Appellants argue:  "A constructive trust is an equitable remedy, not a substantive claim for relief. [Citations.] The anti-SLAPP statute applies only to a cause of action, not to a remedy. [Citation.]" Assuming both premises are correct, the resultant conclusion would be detrimental to appellants' position. If the constructive trust allegations are a prayer for relief rather than a cause of action (first premise) and the anti-SLAPP statute does not apply to remedies (second premise), then the anti-SLAPP statute does not apply to the constructive trust allegations (conclusion).

4. Fifth Cause of Action:  Financial Elder Abuse

In the fifth cause of action, respondents allege appellants committed financial elder abuse against Baker.  Specifically, the cause of action alleges appellants took "numerous actions" to (1) "interfere" with Baker and Coyote Springs operations; (2) remove and/or evict Baker from 2100 Old Highway and (3) deny Baker the financial rewards of the time and money he invested in Coyote Springs.

As we explained *ante*, Alfonse's act of attempting to evict Baker from 2100 Old Highway through an unlawful detainer action is protected conduct under section 425.16.  (See *Feldman v. 1100 Park Lane Associates*, *supra*, 160 Cal.App.4th at p. 1480.)  Thus, this claim is "mixed," in that it alleges liability based on one protected act and several unprotected acts.  Because this cause of action is mixed, it "is subject to section 425.16 if at least one of the underlying acts is protected conduct, unless the allegations of protected conduct are merely incidental to the unprotected activity.  [Citation.]"  (*Salma v. Capon*, *supra*, 161 Cal.App.4th at p. 1287.)  Having determined that "at least one of the underlying acts is protected conduct," (*ibid*) our focus now shifts to whether the allegations of protected conduct are merely incidental to the unprotected activity.  (See *ibid*.)

We emphasize that in analyzing a mixed cause of action, we do not simply count the number of protected versus nonprotected acts alleged to determine whether the cause of action arises out of protected conduct.  (See *Haight Ashbury Free Clinics, Inc.*, *supra*, 184 Cal.App.4th at p. 1553.)  "[T]he mere fact that there are numerically far fewer allegations of protected wrongdoing than there are allegations of nonprotected wrongdoing does not mean that the allegations of protected activity are merely *incidental* to either the causes of action or the nonprotected activity…." (*Ibid*., original italics.)

Instead, "an alleged act is incidental to a claim … *only* if the act is not alleged to be the basis for liability.  [Citations.]"  (*Wallace v. McCubbin*, *supra*, 196 Cal.App.4th at p. 1183, italics added.)  If the complaint "asserts liability and seeks damages" for an act,

17.

then the act is not incidental. (See *Haight Ashbury Free Clinics, Inc.*, *supra*, 184 Cal.App.4th at p. 1553.)

Here, Alfonse's effort to evict Baker (i.e., the unlawful detainer action) is clearly alleged to be *one* basis for liability for financial elder abuse. Therefore, the allegation regarding protected conduct is not "incidental."[13]

### 5. Sixth Cause of Action: Intentional Interference with Economic Relations

The sixth cause of action is a brief five sentences, alleging appellants intentionally interfered with and disrupted Coyote Springs' business "in numerous ways" as "set forth in this Complaint." It also alleges that the "aforementioned acts, as outlined in detail in this Complaint, were and continue to be disruptive and interfering to Baker, Oakander and the [Coyote Springs] business operations .…"

It seems clear that this cause of action is based *in part* on the unlawful detainer action. The filing of the unlawful detainer action was an "aforementioned act[]" that was allegedly "disruptive and interfering to Baker .…" Though not dispositive, the cause of action also references an alleged conspiracy among appellants to "oust" Oakander and Baker from the property. We conclude these allegations show that the filing and prosecution of the unlawful detainer action was one of several acts upon which the intentional interference with economic relations claim was based.

### 6. Seventh Cause of Action: Trespass

In the seventh cause of action, respondents allege that appellants "wrongfully and

---

[13] In its ruling, the trial court stated: "[T]he Court finds that the unlawful detainer does not form the *entire basis* of this [cause of] action." (Italics added.) This is not the correct standard for determining whether a mixed cause of action is subject to the anti-SLAPP statute. Even when allegations of protected conduct are something less than the "entire basis" for a cause of action, the anti-SLAPP statute may still apply. Indeed, in every "mixed" cause of action there are allegations of protected and unprotected activity. Thus, allegations of protected conduct *never* comprise the "entire basis" for a mixed cause of action. If we accepted such a standard, the anti-SLAPP statute would never apply to mixed claims.

unlawfully" entered onto the 2100 Old Highway property. This claim is clearly based on acts other than the prosecution of the unlawful detainer action. The court properly denied the anti-SLAPP motion as to the trespass cause of action.

### 7. Eighth Cause of Action: Conversion

In the eighth cause of action, respondents allege Theresa "removed numerous items" from the 2100 and 2412 Old Highway properties and attempted to sell them. Thus, the cause of action is not "based on" the unlawful detainer action. The court properly denied the anti-SLAPP motion as to the conversion cause of action.

### 8. Ninth Cause of Action: Intentional Infliction of Emotional Distress

In the ninth cause of action, respondents allege appellants caused them emotional distress by conspiring to oust them from the property, and interfering with the profitability of Coyote Springs. The cause of action does not identify the specific acts of interference committed by appellants. However, it is clear from the entirety of the pleading that *one* of the ways Alfonse allegedly interfered with Coyote Springs's business was the filing of the unlawful detainer action.[14] Because the unlawful detainer action is alleged as *one* basis for liability, the first prong is satisfied.

### 9. Tenth Cause of Action: Negligent Infliction of Emotional Distress

In the tenth cause of action, respondents allege that appellants negligently inflicted emotional distress. The cause of action does not incorporate the allegations of the preceding cause of action for intentional infliction of emotional distress. The injurious conduct alleged as the basis for liability is appellants' failure to uphold "certain" promises and commitments. It is further alleged that appellants negligently allowed Coyote Springs to be damaged by "their actions," causing upheaval of the business and emotional distress to the individual respondents. These allegations of appellants' "acts"

---

[14] In an allegation incorporated into each cause of action, the complaint averred that Alfonse commenced the unlawful detainer action, which was "contrary to the … interests of" Coyote Springs in 2100 Old Highway.

19.

are woefully vague.  Indeed, the only discrete acts identified in this cause of action are those incorporated by reference.

Among those alleged acts incorporated by reference is appellants' prosecution of the unlawful detainer action.  Because one of the acts underlying the liability alleged in this claim is protected, the first prong was satisfied.

### 10. Eleventh Cause of Action:  Breach of Contract

In the eleventh cause of action, respondents allege that appellants breached the oral agreement in three ways:  (1) by failing to finalize and obtaining an 80 percent mortgage; (2) by obtaining the grant deed from the title company and recording it; and (3) by filing the unlawful detainer action.

This cause of action is clearly based, in part, on the unlawful detainer action.  The filing of the unlawful detainer action is specifically and explicitly identified as a discrete breach of the alleged contract.  Therefore, this allegation is not merely incidental.

### 11. Twelfth Cause of Action:  Cancellation of Deed

In the twelfth cause of action, respondents seek cancellation of the deed to 2100 Old Highway in favor of Alfonse.  The claim is based on allegations that Alfonse fraudulently induced Baker to sign the deed and then wrongfully demanded the deed from the title company.  Again, these acts are independent of the unlawful detainer action.

At oral argument, Alfonse's counsel argued that his client's recording of the grant deed was mere "preparation" for the unlawful detainer lawsuit and was therefore protected activity.  This is far too broad a definition of litigation-related protected activity.  Some cases have held that *communications* made in preparation for a lawsuit constitute protected activity under the anti-SLAPP statute.  (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115; see also, *Salma v. Capon*, *supra*, 161 Cal.App.4th at p. 1285; *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908.)  However, we are aware of no decision that identifies substantive conduct like recording a

grant deed as protected pre-litigation activity under section 425.16. Such a construction of "protected activity" would drastically and impermissibly expand the scope of the anti-SLAPP statute.

The trial court properly denied the anti-SLAPP motion as to the twelfth cause of action.

### E. Conclusion

For the reasons explained *ante*, we conclude the trial court erroneously found that the fifth, sixth, ninth, tenth and eleventh causes of action did not satisfy the first prong of the section 425.16 analysis. However, we express no view on whether the second prong has been satisfied as to those claims. "Because the trial court concluded that [appellants] had not met [their] burden under the first prong of the section 425.16 analysis, it did not address the second prong. Although the parties have … briefed the issues pertaining to the probability of plaintiffs prevailing on their causes of action" it is "more appropriate that the trial court address these issues in the first instance…." (*Birkner v. Lam* (2007) 156 Cal.App.4th 275, 286; see, e.g., *Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 261–262, 267, 271–272.)

## II.

## ATTORNEY FEES

Because we vacate the denial of the anti-SLAPP motion in part, we also vacate the order imposing attorney fees. That order was based on the finding that the anti-SLAPP motion was "completely devoid of merit." As explained *ante*, we conclude otherwise.[15]

_____

[15] Appellants filed motions requesting that we take evidence on appeal (§ 909), make findings of fact, and take judicial notice of certain documents. The motions to take evidence and make findings requested that we accept evidence and make findings which, appellants claim, are "relevant to the issue of whether the proper award of attorneys fees is zero in this instance." Similarly, the request for judicial notice pertained to documents purportedly "relevant to the issue of whether Respondents are entitled to any attorneys fees incurred." Because we vacate the attorney fees award on other grounds, we deny these motions.

21.

## III.

## REMAND

On remand, the court shall determine whether the plaintiffs carried their burden on the second prong with respect to the fifth, sixth, ninth, tenth and eleventh causes of action.[16]  If the trial court determines that only "a portion of a cause of action … falls within anti-SLAPP protections," it may strike only the offending portion of the claim and allow the remainder of the cause of action to proceed to trial.  (See *City of Colton v. Singletary*, *supra*, 206 Cal.App.4th at p. 774; see generally *Cho v. Chang* (2013) 219 Cal.App.4th 521.)[17]

Nothing in this opinion shall prohibit the trial court for re-imposing attorney fees, if appropriate, after it issues its final ruling on the anti-SLAPP motion.  (See § 425.16, subd. (c)(1).)

The order denying the parties' evidentiary objections and requests for judicial notice will be vacated so that the court may reconsider these rulings as it evaluates the second prong of the section 425.16 analysis.

## IV.

## DISPOSITION

Appellants' motions to take evidence, make findings, and take judicial notice are denied.

---

[16] The trial court need not give further consideration to the first, second, third, fourth, seventh, eighth, and twelfth causes of action, because we conclude it properly denied the anti-SLAPP motion as to those causes of action.

[17] For example, even if Alfonse prevails on the second prong analysis with respect to the breach of contract cause of action, the appropriate remedy would be to strike only those portions of the cause of action predicated on the unlawful detainer action.  Thus, the court should not strike Baker's claims that Alfonse breached the contract by (1) failing to finalize and obtain the 80 percent mortgage and by (2) obtaining the grant deed from the title company and recording it.  Neither of those claims arise from protected activity.

As to the first, second, third, fourth, seventh, eighth, and twelfth causes of action, the order denying the special motion to strike is affirmed.  As to the fifth, sixth, ninth, tenth and eleventh causes of action, the order denying the special motion to strike is vacated.  The court's ruling on the parties' evidentiary objections and requests for judicial notice are vacated.

The order imposing attorney fees is vacated.

The matter is remanded for further proceedings consistent with this opinion.  The parties shall bear their own costs on appeal.

_____
Poochigian, J.


WE CONCUR:


_____
Gomes, Acting P.J.


_____
Franson, J.

23.